# CENTRAL LAND COMPANY *v.* LAIDLEY.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA.

No. 239. Argued March 29, April 1, 1895. — Decided June 3, 1895.

This court has no jurisdiction of a writ of error to a state court, on the ground that the obligation of a contract has been impaired, when the validity of the statute under which the contract was made is admitted, and the only question is of its construction by that court.

When the parties have been fully heard in the regular course of judicial proceedings, an erroneous decision of a state court does not deprive the unsuccessful party of his property without due process of law, within the Fourteenth Amendment to the Constitution of the United States.

THIS was an action of ejectment, brought in April, 1882, in the circuit court of Cabell County, in the State of West Virginia, by John B. Laidley against the Central Land Company of West Virginia, to recover a tract of land in that State. The material facts were as follows:

Both parties claimed title under Sarah H. G. Pennybacker. On February 25, 1870, she, being the owner of the tract, and the wife of John M. Pennybacker, executed, with her husband, a deed purporting to convey the land to C. P. Huntington. That deed was duly recorded, together with certificates of the recorder that, on the same day, the husband came before him and acknowledged it to be his voluntary act and deed for the uses and purposes therein mentioned; and that the wife came before him, "and being examined by me privily and apart from her husband, and having the deed aforesaid fully explained to her, she, the said Sarah H. G. Pennybacker, acknowledged that she had willingly signed, sealed and delivered the same, and wished not to retract it." On October 16, 1871, Huntington conveyed his title to the Central Land Company. On January 26, 1882, Mrs. Pennybacker, having become a widow, executed and acknowledged, in due form of law, a deed of the same land to Laidley. These deeds were duly recorded.

At the first trial of this action, in December, 1884, Laidley requested the court to instruct the jury that the deed of Mr. and Mrs. Pennybacker conveyed his interest in the land; but that, if she was his wife at the time of its execution and acknowledgment, it was not valid, so far as it purported to be her deed, and did not convey any interest she might have in the land, and could not operate by way of estoppel against her or her grantees. The court declined to give this instruction; and a verdict was returned for the Central Land Company, and judgment rendered thereon. Laidley took the case by writ of error to the Supreme Court of Appeals of West Virginia, which, in November, 1887, held that the instruction requested by Laidley should have been given; and that the wife's acknowledgment was defective, because it did not show that she had met all the requirements of the Code of West

Virginia of 1868, c. 73, § 4, (copied in the margin,[1]) which the court held to be that she should acknowledge the deed to be her act, should declare that she had willingly executed it, and should declare that she did not wish to retract it.   The court accordingly reversed the judgment, and ordered the verdict to be set aside, and a new trial had in the circuit court of Cabell County.   30 West Virginia, 505.

In March, 1888, the Central Land Company filed in the county court a bill in equity against Laidley, alleging that Huntington, through his agent, Laidley's father, purchased from Mr. and Mrs. Pennybacker the whole title in the land, and paid the price of $11,000, which was then its full value, and took possession of it under the deed of February 25, 1870, and held it until his conveyance to the Central Land Company, which had since been in possession thereof ; that Laidley procured the deed of January 26, 1882, from Mrs. Pennybacker fraudulently, and with notice of all these facts, and for the price of only $500, although the land had greatly increased in value ; that the Supreme Court of Appeals, in the action of ejectment, had decided that the certificate of acknowledgment was defective in law, and consequently the deed did not convey her title to Huntington, and therefore reversed the judgment of the court below, and remanded the case for a new trial.   The bill charged that, under and by virtue of that decision of the Supreme Court of Appeals, the legal title was in Laidley, but that he held it in trust for the Central Land Company, and prayed for a declaration and execution of the trust, and for an injunction against the action at law, and for further relief.   That bill was dismissed upon a hearing, and the decree of dismissal was, on appeal, affirmed by the Supreme Court of Appeals in February, 1889.   32 West Virginia, 134.

---

[1] When a husband and his wife have signed a writing purporting to convey real estate, she may appear before a recorder authorized to admit such writing to record in his office ; and if, on being examined privily and apart from her husband by such recorder, and having such writing fully explained to her, she acknowledge the same to be her act, and declare that she had willingly executed the same, and does not wish to retract it, such privy examination, acknowledgment and declaration shall then be recorded by such recorder in his office.

In September, 1890, this action of ejectment was tried again in the circuit court of Cabell County. The Central Land Company requested the court to instruct. the jury that, if they found from the evidence that Huntington purchased, paid for and took possession of the land, and afterwards, and before this action was brought, conveyed it to the Central Land Company, which took and since held possession thereof, then, by section 8 of article 11 of the constitution of the State of West Virginia, adopted by the people thereof in 1863; and by section 4 of chapter 73 of the Code of West Virginia of 1868, which section 4 was taken from the Code of Virginia of 1860, and was in force in the territory included in the State of West Virginia at the time of the adoption of its constitution; and by the settled construction and interpretation which, before the formation of the State of West Virginia, had been given to this section by the Supreme Court of Appeals of Virginia in the cases of *Hairston* v. *Randolph,* 12 Leigh, 445, *Siter* v. *McClanachan,* 2 Grattan, 280, and *Grove* v. *Zumbro,* 14 Grattan, 401; the deed of February 25, 1870, from Mr. and Mrs. Pennybacker to Huntington, acknowledged as aforesaid, was sufficient to pass to him all the right, title and interest of both the husband and the wife in the land, and the jury should find a verdict for the defendant. The court declined so to instruct the jury; and, at Laidley's request, instructed them that if, at the time of the execution of the deed of February 25, 1870, Mrs. Pennybacker was a married woman, that deed was absolutely void as to her, and passed no title of hers, legal or equitable, to Huntington; and by her deed of January 26, 1882, Laidley became vested with all her title and interest in the land.

The Central Land Company excepted to the refusal to instruct, and to the instruction given; and, after verdict and judgment for Laidley, presented to the Supreme Court of Appeals a petition for a writ of error, which was refused, "because the court is of opinion that the judgment complained of is plainly right; and the petitioner desiring to present to the Supreme Court of the United States a petition for a writ of error from this judgment, leave is hereby given to the petitioner to withdraw the petition and transcript of record aforesaid for that purpose."

The Central Land Company thereupon sued out this writ of error, and assigned the following errors:

1st. "That the purchase of the said land of the said Pennybackers, and the said deed conveying the same, became an executed contract, which no action of the judiciary of the State of West Virginia had any right, authority or power to impair or invalidate by changing the settled construction of said section 4 of chapter 73 of the Code of West Virginia of 1868."

2d. "That under and by virtue of section 10, article 1, of the Constitution of the United States, no State is permitted to pass any law impairing the obligation of contracts; that the statutory construction of the laws of West Virginia, as it existed when the contract was made, governed the rights of parties, and rights vested under such existing constructions of the then laws cannot be divested, under said clause of the Constitution of the United States, by a subsequent decision of the state courts holding contracts invalid that were valid when made; such decisions of the state courts are contrary to the Constitution of the United States."

3d. "Because there appears on the record of said cause a Federal question in this; that the courts of West Virginia, in construing the said statute relating to deeds and acknowledgments thereof so as to invalidate the said deed to C. P. Huntington, under which your petitioner claims, changed, without legislative action, the settled and established construction which existed at the time of the execution and delivery of said deed, which is contrary to the Constitution of the United States; and that there is a Federal question raised by said record in this; that the said decision of the circuit court of Cabell County, which undertakes to deprive your petitioner of his property, is without due process of law, retroactive in its effect, and unconstitutional."

Laidley moved to dismiss the writ of error, for want of jurisdiction; and the motion to dismiss was argued with the merits of the case.

*Mr. F. B. Enslow* and *Mr. J. H. Ferguson,* (with whom was *Mr. H. C. Sims* on the brief,) for plaintiff in error. In

opposing the motion of the defendant in error to dismiss for want of jurisdiction they cited, among other cases : *Douglass* v. *County of Pike*, 101 U. S. 677; *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Chicago* v. *Sheldon*, 9 Wall. 50; *Olcott* v. *Supervisors*, 16 Wall. 678; *Chicago Life Insurance Co.* v. *Needles*, 113 U. S. 574; *Anderson* v. *Santa Anna*, 116 U. S. 356; *Bostwick* v. *Brinkerhoff*, 106 U. S. 3; *Johnson* v. *Keith*, 117 U. S. 199.

*Mr. W. E. Chilton* and *Mr. J. F. Brown*, (with whom was *Mr. John E. Kenna* on the brief,) for defendant in error. In support of the motion to dismiss they cited among other cases; *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486; *Knox* v. *Exchange Bank*, 12 Wall. 379; *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.*, 125 U. S. 18; *Railroad Company* v. *Rock*, 4 Wall. 177; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *St. Paul, Minneapolis & Manitoba Railway* v. *Todd County*, 142 U. S. 282; *Blount* v. *Walker*, 134 U. S. 607; *Beatty* v. *Benton*, 135 U. S. 244; *San Francisco* v. *Itsell*, 133 U. S. 65; *Hopkins* v. *McLure*, 133 U. S. 380; *Hale* v. *Akers*, 132 U. S. 554; *Marrow* v. *Brinkley*, 129 U. S. 178; *DeSaussure* v. *Gaillard*, 127 U. S. 216; *Crossley* v. *New Orleans*, 108 U. S. 105; *Santa Cruz County* v. *Santa Cruz Railroad*, 111 U. S. 361; *McManus* v. *O'Sullivan*, 91 U. S. 578; *Murdock* v. *Memphis*, 20 Wall. 590; *Commercial Bank* v. *Buckingham*, 5 How. 317; *Grand Gulf Railroad* v. *Marshall*, 12 How. 165; *Green* v. *Neal*, 6 Pet. 291; *McBride* v. *Hoey*, 11 Pet. 167; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Furman* v. *Nichol*, 8 Wall. 44; *Railroad Company* v. *McClure*, 10 Wall. 511; *Burgess* v. *Seligman*, 107 U. S. 20; *Crowell* v. *Randolph*, 10 Pet. 368; *Cook County* v. *Calumet & Chicago Canal Co.*, 138 U. S. 635; *Texas Pacific Railway* v. *Southern Pacific Co.*, 137 U. S. 48; *Chappell* v. *Bradshaw*, 128 U. S. 132; *Brooks* v. *Missouri*, 124 U. S. 394; *Detroit City Railway* v. *Guthard*, 114 U. S. 133; *Susquehanna Boom Co.* v. *West Branch Co.*, 110 U. S. 57; *Simmerman* v. *Nebraska*, 116 U. S. 54; *Chouteau* v. *Gibson*, 111 U. S. 200; *Brown* v. *Colorado*, 106 U. S. 95.

*Mr. John B. Laidley* in person also filed a brief in support of the motion to dismiss.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The questions upon the merits of this case, discussed at length by counsel, were whether the Supreme Court of Appeals of West Virginia rightly construed the provision of the Code of that State of 1868, which was, and was admitted to be, in all material respects, a reënactment of the corresponding provision of the Code of Virginia of 1860, prescribing the form of acknowledgment by a married woman of a deed of real estate; and whether the court below gave a construction of that provision less favorable to the validity of such a deed, than had been given to it by its own earlier decisions, and by the highest court of Virginia before the creation of the State of West Virginia. Those questions are not free from difficulty; and this court, before undertaking to pass upon them, must be satisfied that it has jurisdiction to do so.

The grounds relied on for invoking the appellate jurisdiction of this court are, in substance, that by the decision of the Supreme Court of Appeals of West Virginia, without any legislative action, the obligation of the contract contained in the deed from Mr. and Mrs. Pennybacker to Huntington, the grantor of the plaintiff in error, has been impaired, and the plaintiff in error has been deprived of its property without due process of law.

Assuming, without deciding, that these grounds were sufficiently and seasonably taken in the courts of West Virginia, we are of opinion that they present no Federal question.

In order to come within the provision of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by some act of the legislative power of the State, and not by a decision of its judicial department only.

The appellate jurisdiction of this court, upon writ of error

to a state court, on the ground that the obligation of a contract has been impaired, can be invoked only when an act of the legislature alleged to be repugnant to the Constitution of the United States has been decided by the state court to be valid, and not when an act admitted to be valid has been misconstrued by the court. The statute of West Virginia is admitted to have been valid, whether it did or did not apply to the deed in question; and it necessarily follows that the question submitted to and decided by the state court was one of construction only, and not of validity. If this court were to assume jurisdiction of this case, the question submitted for its decision would be, not whether the statute was repugnant to the Constitution of the United States, but whether the highest court of the State has erred in its construction of the statute. As was said by this court, speaking by Mr. Justice Grier, in such a case, as long ago as 1847, "It is the peculiar province and privilege of the state courts to construe their own statutes; and it is no part of the functions of this court to review their decisions, or assume jurisdiction over them on the pretence that their judgments have impaired the obligation of contracts. The power delegated to us is for the restraint of unconstitutional legislation by the States, and not for the correction of alleged errors committed by their judiciary." *Commercial Bank* v. *Buckingham*, 5 How. 317, 343; *Lawler* v. *Walker*, 14 How. 149, 154.

It was said by Mr. Justice Miller, in delivering a later judgment of this court: "We are not authorized by the Judiciary Act to review the judgments of the state courts because their judgments refuse to give effect to valid contracts, or because those judgments, in their effect, impair the obligation of contracts. If we did, every case decided in a state court could be brought here, where the party setting up a contract alleged that the court had taken a different view of its obligation to that which he held." *Knox* v. *Exchange Bank*, 12 Wall. 379, 383.

The same doctrine was stated by Mr. Justice Harlan, speaking for this court, as follows: "The state court may erroneously determine questions arising under a contract which con-

stitutes the basis of the suit before it; it may hold a contract void which, in our opinion, is valid; it may adjudge a contract to be valid which, in our opinion, is void; or its interpretation of the contract may, in our opinion, be radically wrong; but, in neither of such cases, would the judgment be review- able by this court under the clause of the Constitution protecting the obligation of contracts against impairment by state legislation, and under the existing statutes defining and regulating its jurisdiction, unless that judgment, in terms or by its necessary operation, gives effect to some provision of the state constitution, or some legislative enactment of the State, which is claimed by the unsuccessful party to impair the obligation of the particular contract in question." *Lehigh Water Co.* v. *Easton*, 121 U. S. 388, 392.

Many other decisions of this court to the same effect are cited in that case. See also *New Orleans Waterworks* v. *Louisiana Sugar Co.*, 125 U. S. 18, 30; *St. Paul &c. Railway* v. *Todd County*, 142 U. S. 282; *Brown* v. *Smart*, 145 U. S. 452; *Wood* v. *Brady*, 150 U. S. 18.

The decisions cited by the plaintiff in error to support the jurisdiction of this court in the case at bar were either cases in which the writ of error was upon a judgment of a state court, which gave effect to a statute alleged to impair the obligation of a contract made before any such statute existed, as in *Louisiana* v. *Pilsbury*, 105 U. S. 278; in *Chicago Ins. Co.* v. *Needles*, 113 U. S. 574, and in *Mobile & Ohio Railroad* v. *Tennessee*, 153 U. S. 486; or else the writ of error was to a Circuit Court of the United States, bringing to this court the whole case, including the question how far the courts of the United States should follow the decisions of the highest court of the State, as in *Gelpcke* v. *Dubuque*, 1 Wall. 175, 205; *Olcott* v. *Supervisors*, 16 Wall. 678, 690; *Douglass* v. *Pike County*, 101 U. S. 677, 686; *Anderson* v. *Santa Anna*, 116 U. S. 356, 361; and other cases cited in *Louisiana* v. *Pilsbury*, 105 U. S. 278, 295.

The distinction, as to the authority of this court, between writs of error to a court of the United States and writs of error to the highest court of a State, is well illustrated by two

of the earliest cases relating to municipal bonds, in both of which the opinion was delivered by Mr. Justice Swayne, and in each of which the question presented was whether the constitution of the State of Iowa permitted the legislature to authorize municipal corporations to issue bonds in aid of the construction of a railroad. The Supreme Court of the State, by decisions made before the bonds in question were issued, had held that it did; but, by decisions made after they had been issued, held that it did not. A judgment of the District Court of the United States for the District of Iowa, following the later decisions of the state court, was reviewed on the merits, and reversed by this court, for misconstruction of the constitution of Iowa. *Gelpcke* v. *Dubuque*, 1 Wall. 175, 206. But a writ of error to review one of those decisions of the Supreme Court of Iowa was dismissed for want of jurisdiction, because, admitting the constitution of the State to be a law of the State, within the meaning of the provision of the Constitution of the United States forbidding a State to pass any law impairing the obligation of contracts, the only question was of its construction by the state court. *Railroad Co.* v. *McClure*, 10 Wall. 511, 515.

When the parties have been fully heard in the regular course of judicial proceedings, an erroneous decision of a state court does not deprive the unsuccessful party of his property without due process of law, within the Fourteenth Amendment of the Constitution of the United States. *Walker* v. *Sauvinet*, 92 U. S. 90; *Head* v. *Amoskeag Co.*, 113 U. S. 9, 26; *Morley* v. *Lake Shore Railroad*, 146 U. S. 162, 171; *Bergmann* v. *Backer*, 157 U. S. 655.

This court therefore has no authority to decide the main questions, argued at the bar, whether the decision of the Supreme Court of Appeals of West Virginia, in effect, and erroneously, overruled the prior decisions of that court, and of the Supreme Court of Appeals of Virginia before West Virginia became a separate State; and the writ of error must be

*Dismissed for want of jurisdiction.*

MR. JUSTICE FIELD dissented.