RILEY, Controller of State of California, v. WORCESTER COUNTY TRUST CO. *

No. 3163.

Circuit Court of Appeals, First Circuit.

March 15, 1937.

*Writ of certiorari granted 57 S.Ct. 931, 81 L.Ed. ——.

MORTON, Circuit Judge, dissenting.

---

George S. Fuller, of Boston, Mass. (Norman W. Bingham, Jr., and Burnham, Bingham, Pillsbury, Dana & Gould all of Boston, Mass., and W. H. H. Gentry, of Sacramento, Cal., on the brief), for appellants.

Merrill S. June, of Worcester, Mass. (Bradley B. Gilman, of Worcester, Mass., on the brief), for appellee.

Paul A. Dever, Atty. Gen., and Henry F. Long, of Boston, Mass., amici curiæ.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the District Court for Massachusetts granting an interlocutory injunction on a bill of complaint in the nature of a bill of interpleader brought by the executor of the will of Robert H. Hunt under the provisions of Judicial Code, § 24(26), as amended by the Act of January 20, 1936 (c. 13, § 1, 49 Stat. 1096, U.S.C. title 28, § 41, 28 U.S.C.A. § 41(26), which will be found in the footnote.[1]

The complainant, the Massachusetts executor, is a citizen of Massachusetts. The

---

[1] "An Act To amend section 24 of the Judicial Code by conferring on district courts additional jurisdiction of bills of interpleader, and of bills in the nature of interpleader.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 24 of the Judicial Code, as amended, is amended by inserting at the end thereof the following:

" '(26) Original jurisdiction of bills of interpleader, and of bills in the nature of interpleader—Twenty-sixth.—(a)    Of

respondent, Henry F. Long, is the Commissioner of Corporations and Taxation of Massachusetts and a citizen of that state. The other respondents are Ray L. Riley, Controller of the state of California, W. H. H. Gentry, Inheritance Tax Attorney of the state of California, and Frank P. Sproul, Inheritance Tax Appraiser of that state, all citizens of California.

In the bill it is alleged that on June 26, 1935, the will of Robert H. Hunt was admitted to probate in Massachusetts; that

suits in equity begun by bills of interpleader or bills in the nature of bills of interpleader duly verified, filed by any person, firm, corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of the value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if—

" '(i) Two or more adverse claimants, citizens of different States, are claiming to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy, or other instrument, or arising by virtue of any such obligation; and

" '(ii) The complainant (a) has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court; or (b) has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the complainant with the future order or decree of the court with respect to the subject matter of the controversy.

" 'Such a suit in equity may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

" '(b) Such a suit may be brought in the district court of the district in which one or more of such claimants resides or reside.

" '(c) Notwithstanding any provision of the Judicial Code to the contrary, said court shall have power to issue its process for all such claimants and to issue an order of injunction against each of them, enjoining them from instituting or prosecuting any suit or proceeding in any State court or in any United States court on account of such money or property or on such instrument or obligation until the further order of the court; which process and order of injunction shall be returnable at such time as the said court or a judge thereof shall determine and shall be addressed to and served by the United States marshals for the respective districts wherein said claimants reside or may be found.

" '(d) Said court shall hear and determine the cause and shall discharge the complainant from further liability; and shall make the injunction permanent and enter all such other orders and decrees as may be necessary or convenient to carry out and enforce the same.

" '(e) In any action at law in a United States District Court against any person, firm, corporation, association, or society, such defendant may set up by way of equitable defense, in accordance with section 274b of the Judicial Code (U.S.C., title 28, sec. 398), any matter which would entitle such person, firm, corporation, association, or society to file an original or ancillary bill of interpleader or bill in the nature of interpleader in the same court or in any other United States District Court against the plaintiff in such action at law and one or more other adverse claimants, under the provisions of paragraph (a) of this subsection or any other provision of the Judicial Code and the rules of court made pursuant thereto. The defendant may join as parties to such equitable defense any claimant or claimants who are not already parties to such action at law. The district court in which such equitable defense is interposed shall thereby possess the powers conferred upon district courts by paragraphs (c) and (d) of this subsection and by section 274b of the Judicial Code.'

"Sec. 2. The Act entitled 'An Act authorizing casualty companies, surety companies, insurance companies or associations or fraternal or beneficial societies to file bills of interpleader', approved May 8, 1926 (U.S.C., Supp. III, title 28, sec. 41 (26)), is hereby repealed. Said repeal shall not affect any act done or any right, accruing or accrued in any suit or proceeding had or commenced under said Act hereby repealed, prior to the passage of this Act, but all such acts or rights, suits or proceedings shall continue and be valid and may be prosecuted and enforced in the same manner as if said Act had not been repealed hereby.

"Approved, January 20, 1936." (28 U. S.C.A. § 41(26) and note.)

the complainant was appointed executor under the will; that Mr. Hunt died on June 11, 1935, possessing at the time of his death certain real estate and a sizeable bank deposit in the state of California, and a like bank deposit in Massachusetts and considerable intangible property, the bulk of which was in the custody and possession of the complainant in Massachusetts; that on July 29, 1935, the Security-First National Bank of Los Angeles, Cal., was appointed administrator with the will annexed of the estate of Mr. Hunt by the superior court of California, in ancillary proceedings; that the complainant, as executor, had in its possession money and property of an amount and value exceeding $500, on which the taxing officials of the two states claim the right adversely to each other to assess a tax; that under the applicable statutes of Massachusetts (General Laws, c. 65, §§ 1, 6 as amended, chapter 65A and chapter 480 of the Acts of 1935) and California (section 2, c. 821 of the Statutes 1921, p. 1501, as amended, and section 3, c. 358 of the Statutes of 1935, p. 1271) complainant is also under obligation to pay any and all estate, inheritance, and succession taxes to said tax officials of the states of Massachusetts and California, respondents herein, irrespective of any demand made therefor, and that said respondent tax officials of both states are claiming to be entitled to the benefits thereof; that, under the provisions of said tax statutes of each state, a tax lien is imposed on all property of the estate of Hunt unless all taxes assessed by said tax officials are paid, and the respondents claim to be entitled to the benefits of such liens.

In paragraphs 8, 9, 10, and 12 of the bill it is alleged:

"8. Your complainant is informed and believes and therefore alleges that the respondent Henry F. Long, commissioner as aforesaid, *has determined* that the said Robert H. Hunt *died domiciled in Massachusetts,* and is asserting and has threatened and is *about to assess and attempt to collect* from your complainant and the Estate in its charge, estate and succession taxes under the provisions of said Massachusetts tax statutes, based upon said domicile or determination of domicile and in an amount in excess of one hundred thousand (100,000) dollars; and that if the said Robert H. Hunt had deceased a non-resident of and not domiciled in Massachusetts the estate and succession taxes under said provisions of Massachusetts tax statutes would be a comparatively nominal amount.

"9. Your complainant is informed and believes and therefore alleges that the respondents, Ray L. Riley, comptroller as aforesaid, W. H. H. Gentry, inheritance tax attorney as aforesaid, and Frank P. Sproul, inheritance tax appraiser, as aforesaid, have each severally or as agent one for another, individually or by their agent or agents, *determined* that the said Robert H. Hunt died *domiciled in California* and are asserting and have threatened and are *about to assess and attempt to collect* from your complainant and the Estate in its charge, estate, inheritance and succession taxes under the provisions of said California tax statutes, based upon said domicile or determination of domicile and in an amount in excess of one hundred thousand (100,000) dollars; and that if the said Robert H. Hunt had deceased a non-resident of and not domiciled in California the estate, inheritance and succession taxes under said provisions of California tax statutes would be a comparatively nominal amount.

"10. That it is impossible in law or fact for the said Robert H. Hunt to have been domiciled at his death in both Massachusetts and California and it should not be possible for estate, inheritance and succession taxes to be so asserted, threatened, assessed and collected by the tax officials or representatives of said two States."

"12. That therefore the threatened collection of both the California and Massachusetts taxes, each based upon an *inconsistent claim of domicile,* will deprive your complainant and the Estate in its charge of property without due process of law and deny it equal protection of the laws in contravention of the Fourteenth Amendment to the Constitution of the United States; that the threatened assessment and collection of both of said taxes, each based upon an inconsistent claim of domicile, is causing irreparable injury by interfering with the administration of the estate both in California and Massachusetts, causing extra expense, preventing distribution, compelling your complainant to maintain large cash reserves at low interest rates or at no interest to cover the threatened taxes and costs of litigation." (Italics supplied.)

It was further alleged that the main controversy related to a sum of $100,000 or more in the custody or possession of complainant and its obligation with respect

thereto under said tax laws; that complainant had no adequate remedy at law; and that it had given bond payable to the clerk of court in such amount and with such sureties as the court had deemed proper, conditioned upon compliance with further orders or decrees of the District Court with respect to the subject matter of the controversy.

The prayers were (1) for a temporary injunction restraining the respondents, their agents and servants, until further order of the court, from taking any further action to fix or assess any estate, inheritance, or succession tax on transfers caused by the death of said Robert H. Hunt, and from taking any action to collect any such taxes "from the Estate of Robert H. Hunt, the Security-First National Bank of Los Angeles as administrator with the will annexed of the Estate of Robert H. Hunt, or your complainant"; (2) that the court determine the domicile of said Robert H. Hunt at the date of his death and then permanently enjoin those respondents who are officials of the nondomiciliary state from taking any action to collect any estate, inheritance, or succession tax based upon any domicile except as so determined; (3) that each of the respondents be required to set forth and plead their several adverse claims to the property in the custody and possession of complainant, and to any of the benefits due to the complainant's obligation to pay estate, inheritance, and succession taxes; (4) that the court determine the person or persons entitled to said money and property and to any benefit arising by virtue of complainant's obligation; (5) that the court determine the sum owed to any one or more of the respondents by complainant; (6) that the court adjudge that complainant is under no further obligation to any one or more of the respondents upon compliance with such decree as this court may make in this case.

The order of injunction here appealed from, after reciting the nature of the complaint, that a hearing had been had upon the California respondents' motion to dismiss the same as to them for want of jurisdiction and to vacate a temporary restraining order theretofore granted, and that it appeared there was danger of irreparable injury, reads:

"Ordered that the respondents, Henry F. Long, Commissioner of Corporations and Taxation of the Commonwealth of Massachusetts, Ray L. Riley, Controller of the State of California, W. H. H. Gentry, Inheritance Tax Attorney of the State of California, Frank P. Sproul, Inheritance Tax Appraiser of the State of California, and each of them, their agents, and servants, be, and they are hereby, enjoined until further order of this court, from taking any action to fix or assess any estate, inheritance or succession tax on transfers caused by the death of said Robert H. Hunt, and from taking any action to collect any estate, inheritance or succession tax from the Estate of Robert H. Hunt, the Security-First National Bank of Los Angeles as administrator with the will annexed of the Estate of Robert H. Hunt, or the complainant."

In their assignments of error the appellants, the officials of California, complain that the court erred (1) in ruling that the present suit comes within the scope of the Federal Interpleader Act; (2) in ruling that the Federal Interpleader Act, construed to include within its scope the present suit, is not invalid to that extent as being in violation of the Eleventh Amendment of the Constitution of the United States; (3) in ruling that the present suit is not a suit in law or in equity commenced or prosecuted against the state of California by a citizen of another state and in violation of the Eleventh Amendment; (4) in ruling that it had jurisdiction to require that there be tried before and determined by it the alleged controversy as to whether the decedent at the time of his death was domiciled for inheritance tax purposes in the state of California or in the commonwealth of Massachusetts, notwithstanding the provisions of article 3, § 2, of the Constitution of the United States, and section 233 of the Judicial Code (28 U.S.C.A. § 341); (5) in ruling that under the California statutes the proceeding to recover the inheritance taxes with respect to the estate of the decedent, Robert H. Hunt, would probably be brought in the name of the respondent Ray L. Riley, Controller of the state of California; and (6) in ruling it had jurisdiction over these California respondents in the instant case.

It is apparent from a reading of the interpleader statute that the original jurisdiction conferred upon the District Courts relative to bills of interpleader and bills in the nature of interpleader, and authorizing such suits to be brought by any person having the custody or possession of money or property of the value of $500 or more, or

being under any obligation, written or unwritten, to the amount of $500 or more, is conditioned upon there being two or more parties, citizens of different states, claiming adversely to one another, to be entitled to money or property of the value of $500 or more in the complainant's hands, or claiming the benefits arising by virtue of any obligation in the amount of $500 or more, to which the complainant is subject; that the parties sought to be impleaded must have a claim adverse to one another; and that the District Court shall have before it as respondents the real parties in interest, so that, having determined the liability of the complainant to one of the impleaded claimants, it can, upon satisfaction of that liability, discharge him from further liability to both adverse claimants. And it is apparent that, unless these conditions exist, it was not the intention of Congress that the provisions of the Interpleader Act could be availed of.

█ It is also certain that by the complainant's bill it is alleged that the complainant has in his hands, as executor of the estate of Mr. Hunt, money or property of the amount and value of more than $500 and is also under an obligation to one or the other of the claimants in excess of that amount. But whether the bill of complaint meets other conditions of the Interpleader Act, namely, whether the respondents, the officials of the states of California and Massachusetts, are properly interpleaded, depends largely, if not wholly, upon a construction of the allegations of the complaint, disclosing whether they are sued individually and as citizens of different states, or whether they are sued as representatives and agents of the states of California and Massachusetts. If they are sued as agents and representatives of the respective states, then the states themselves have been interpleaded (Missouri v. Fiske, 290 U.S. 18, 25, 26, 28, 54 S.Ct. 18, 20, 21, 78 L.Ed. 145; In re Ayers, 123 U.S. 443, 505, 506, 8 S.Ct. 164, 31 L.Ed. 216; Missouri, etc., Ry. Co. v. Missouri R. & W. Com'rs, 183 U.S. 53, 58, 59, 22 S.Ct. 18, 46 L.Ed. 78; Ex parte State of New York, No. 1, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057; Sterling v. Constantin, 287 U.S. 378, 393, 53 S.Ct. 190, 193, 77 L.Ed. 375, and cases cited), and as the states are not citizens of the United States the complaint cannot be maintained under the Interpleader Act, for under that act only citizens of different states can be interpleaded. A state is not a citizen of the United States. Minnesota v. Northern Securities Co., 194 U.S. 48, 63, 24 S.Ct. 598, 48 L.Ed. 870; Postal Tel. Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231.

█ It is clear, therefore, that the Interpleader Act does not contemplate the impleading of states as adverse claimants, but only citizens of different states, and, if it did, Congress would have acted in excess of its authority under the Constitution (Amendment 11) in attempting to confer such power upon the District Courts, for original jurisdiction of suits between states is conferred upon the Supreme Court. Article 3, § 2, cl. 2, of the Constitution. Furthermore, the Eleventh Amendment prohibits the courts of the United States from entertaining a suit against a state by a citizen of another state.

█ While the judicial power of the United States extends to controversies between two or more states and to suits brought by a state against citizens of another state (article 3, § 2, cl. 1), it does not extend to a suit brought against a state by citizens of another state. Eleventh Amendment. And because of its sovereignty no suit can be maintained against a state, without its consent, by one of its own citizens. Principality of Monaco v. Mississippi, 292 U.S. 313, 324, 54 S.Ct. 745, 748, 78 L.Ed. 1282.

In Ex parte State of New York, No. 1, 256 U.S. 490, at page 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057, the court said:

"That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given: not one brought by citizens of another state, or by citizens or subjects of a foreign state, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the amendment is but an exemplification. Beers, Use of Platenius, v. Arkansas, 20 How. 527, 529, 15 L.Ed. 991; Memphis & C. Railroad Co. v. Tennessee, 101 U.S. 337, 339, 25 L.Ed. 960; Hans v. Louisiana, 134 U.S. 1, 10–17, 10 S.Ct. 504, 33 L.Ed. 842; North Carolina v. Temple, 134 U.S. 22, 30,

10 S.Ct. 509, 33 L.Ed. 849; Fitts v. McGhee, 172 U.S. 516, 524, 19 S.Ct. 269, 43 L.Ed. 535; Palmer v. Ohio, 248 U.S. 32, 34, 39 S.Ct. 16, 63 L.Ed. 108; Duhne v. New Jersey, 251 U.S. 311, 313, 40 S.Ct. 154, 64 L.Ed. 280."

And in the same case, 256 U.S. 490, at page 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057:

"It is now established that the question [what is to be deemed a suit against a state] is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record (Louisiana ex rel. Elliott v. Jumel, 107 U.S. 711, 719, 720, 723, 727, 728, 2 S.Ct. 128, 27 L.Ed. 448; Hagood v. Southern, 117 U.S. 52, 67, et seq., 6 S.Ct. 608, 29 L.Ed. 805; In re Ayers, 123 U.S. 443, 487–492, 8 S.Ct. 164, 31 L.Ed. 216; Pennoyer v. McConnaughy, 140 U.S. 1, 10, et seq., 11 S.Ct. 699, 35 L.Ed. 363; Smith v. Reeves, 178 U.S. 436, 438–440, 20 S.Ct. 919, 44 L.Ed. 1140; Murray v. Wilson Distilling Co., 213 U.S. 151, 168–170, 29 S.Ct. 458, 53 L.Ed. 742; Lankford v. Platte Iron Works Co., 235 U.S. 461, 469, 35 S.Ct. 173, 59 L.Ed. 316)."

It is therefore necessary to ascertain by a construction of the allegations of the complaint whether the tax officials of the two states are sued or can be treated as being sued as individuals or only as representatives and agents of the states.

According to the allegations of the complaint, Mr. Long, as tax official of Massachusetts, has determined that Mr. Hunt died domiciled in that state and has threatened and is about to assess and collect of the complainant, and the estate in its charge, inheritance, and succession taxes imposed under the provisions of the Massachusetts tax statutes upon the transmission of the personal property of the estate, tangible or intangible, within the jurisdiction of the state, based upon the determination of domicile and consequent situs of the intangible property in that state; and that the respondents, officials of California, have determined that Mr. Hunt died domiciled in California and are threatening and about to assess and collect from the complainant and the estate in its charge similar taxes (based on domicile and situs of the intangible property of the estate within the jurisdiction of that state) imposed under the provisions of the California tax statutes.

It is to be noted that it is not alleged that the tax statutes under which the respondent officials of the two states are acting are unconstitutional or that they do not authorize the assessment and collection of such taxes against the complainant or the estate in its hands, if Hunt died domiciled in either state. It therefore cannot be said that the respondent officials of either Massachusetts or California are acting under unconstitutional and void tax laws, in which case they would be acting unlawfully and as individuals, not as officials and agents of the respective states. And the complainant in its brief concedes this. It there states: "The bill nowhere alleges that a statute of either State is unconstitutional and no such claim is made."

It is also to be noted that neither one nor both of the respondents, as tax officials of the respective states, are charged with acting in violation of the laws of their respective states and to have determined the question of domicile arbitrarily and without substantial evidence to support such determination. See Johnson Oil Co. v. Oklahoma, 290 U.S. 158, 160, 54 S.Ct. 152, 153, 78 L.Ed. 238, and cases there cited in the footnote; Beidler v. South Carolina Tax Commission, 282 U.S. 1, 8, 9, 51 S.Ct. 54, 55, 75 L.Ed. 131. If there was such an allegation with respect to the determination of domicile by both sets of officials, they could be regarded as sued as individuals, for the acts which they would be charged with having done would be in violation of law, unless it could be said from a consideration of the complaint as a whole that the *relief sought* was against the states and not the officials personally. But by the bill the officials of neither state are charged with having acted, in determining the question of domicile, arbitrarily and without evidence to support their conclusions and in violation of law.

In the absence of such allegations in the complaint, it must be regarded, in the respects above alluded to, as being an attempt to implead the states of California and Massachusetts as adverse claimants, which neither the Interpleader Act nor the Constitution permits. On the other hand, to bring the bill within the provisions of the Interpleader Act and have the officials interpleaded regarded as citizens of different states, it was essential for the complainant to charge in the bill that the determination of domicile in each state

was without adequate evidence and in violation of law, for, if only one set of officials was so charged, then the complainant would be impleading one set of officials as individuals and the other set as agents and representatives of a state, which would be impleading individual citizens against a state, would not meet the requirements of the Interpleader Act, and would be in violation of the Eleventh Amendment.

But, notwithstanding what has been said, the complainant contends that Mr. Hunt could not have had his domicile at the time of his death both in California and Massachusetts and that "the threatened collection of both the California and Massachusetts taxes, each based on an inconsistent claim of domicile, will deprive your complainant of property without due process of law and deny it equal protection of the laws in contravention of the Fourteenth Amendment to the Constitution of the United States."

It is true that, if the threatened taxes were later assessed and collected in each state, based upon a determination of domicile in each, the complainant and the estate in its hands would be subjected to the payment of two taxes. But, if the officials of the respective states, in making their determination and assessment, were acting under constitutional laws of sovereign states and in compliance with them—not in violation of them—it is difficult to see how the complainant, or the estate in its hands, would be deprived of property without due process of law or be deprived of the equal protection of the law, in violation of the Fourteenth Amendment. And in this case, the tax laws of the respective states being conceded to be constitutional and there being no allegations that the officials of either state acted in violation of the laws of their respective states (Johnson Oil Co. v. Oklahoma, 290 U.S. 158, 160, 54 S.Ct. 152, 153, 78 L.Ed. 238), it must be assumed that, in determining the question of domicile, each set of tax officials acted in conformity to law and had before it adequate evidence to support the conclusion reached. It is entirely conceivable that each set of officials could have found that the domicile of the decedent was in its state and that neither acted in violation of law; and, if they did not act in violation of law, the taxes assessed and collected on such determinations would not contravene the Fourteenth Amendment. In reaching the conclusion they did on the evidence one or the other

may have erred in judgment, but such error would not be a lack of due process or in violation of the equal protection clause. It has been settled that that amendment does not assure immunity from judicial error or uniformity of judicial decisions. Milwaukee Electric Ry. & Light Co. v. Wisconsin, 252 U.S. 100, 106, 40 S.Ct. 306, 309, 64 L.Ed. 476, 10 A.L.R. 892; Central Land Co v. Laidley, 159 U.S. 103, 16 S.Ct. 80, 40 L.Ed. 91; Tracy v. Ginzberg, 205 U.S. 170, 27 S.Ct. 461, 51 L.Ed. 755.

In the Wisconsin Case, supra, it was said:

"The Fourteenth Amendment does not, in guaranteeing equal protection of the laws, assure uniformity of judicial decisions * * * any more than in guaranteeing due process it assures immunity from judicial error."

The question of a double tax based on inconsistent determinations of domicile was before the Supreme Court on a petition for certiorari to the New Jersey Court of Errors and Appeals in the case of Dorrance et al. v. Martin, 298 U.S. 678, 56 S.Ct. 949, 80 L.Ed. 1399, where that court declined to take the case on certiorari. There the tax officials of New Jersey, the Prerogative Court of that state (115 N.J.Eq. 268, 170 A. 601; 116 N.J.Eq. 204, 172 A. 503), the Supreme Court of New Jersey (176 A. 902, 13 N.J.Misc. 168), and its Court of Errors and Appeals (116 N.J.Law, 362, 184 A. 743), on the one hand, had determined that the domicile of Mr. Dorrance, at the time of his death, was in New Jersey and imposed an inheritance or succession tax on his estate, including therein the intangible property; and, on the other hand, the tax officials of Pennsylvania and the courts of that state, including its Supreme Court (In re Dorrance's Estate, 309 Pa. 151, 163 A. 303), had determined that his domicile was in Pennsylvania, and, having so determined and entered judgment accordingly, the state collected a tax on the devolution of his estate, including the intangible property, on the ground that its situs was in Pennsylvania, where its courts had decided his domicile was.

In the New Jersey proceeding all the evidence introduced in the Pennsylvania proceeding, including the judgment of the Supreme Court of Pennsylvania, was introduced before the tax officials of New Jersey, who found the decedent domiciled in New Jersey. An appeal was taken to the Prerogative Court. In the Prerogative

Court the judgment of the Supreme Court of Pennsylvania was excluded from consideration on the ground that it was not conclusive evidence upon the question of domicile and, not being conclusive, was not competent evidence. The Prerogative Court having affirmed the decision of the tax officials, the case was taken to the Supreme Court of New Jersey, where the appellants complained (1) that the Prerogative Court failed to give full faith and credit to the judgment of the Supreme Court of Pennsylvania; (2) that the imposition of a tax by New Jersey, based on a domicile there, would result in the payment of two taxes on the devolution of the same estate, Pennsylvania having determined the decedent's domicile to have been in Pennsylvania and having assessed and collected inheritance taxes accordingly, and that this would be in violation of the due process and the equal protection clauses of the Fourteenth Amendment; and (3) that the tax officials of New Jersey acted in violation of law in determining that Mr. Dorrance was domiciled in New Jersey. On appeal to the Court of Errors and Appeals the same questions were raised and that court sustained the judgment of the Supreme Court affirming the judgment of the Prerogative Court.

The executors then petitioned the Supreme Court of the United States for certiorari, assigning as error (1) the failure of the courts of New Jersey to give full faith and credit to the judgment of the Pennsylvania court; (2) that as the tax judgment of the Court of Errors and Appeals affirming the judgments of the lower courts was based on a domicile of Mr. Dorrance in New Jersey, if held valid and paid (the petitioning executors having already paid a tax based on domicile in Pennsylvania), it would deprive them of their property in contravention of the due process and equal protection clauses of the Fourteenth Amendment; and (3) that the state officials and courts of New Jersey acted in violation of law in determining the domicile of Mr. Dorrance to be in that state.

In its denial of certiorari, the constitutional question—that the New Jersey courts had failed to give full faith and credit to the Pennsylvania judgment—was undoubtedly regarded by the Supreme Court as unsubstantial, that question having been previously decided many times by that court. Overby v. Gordon, 177 U.S. 214, 227, 20 S.Ct. 603, 44 L.Ed. 741; Tilt v. Kelsey, 207 U.S. 43, 53, 59, 28 S.Ct. 1, 52 L.Ed. 95; Thormann v. Frame, 176 U.S. 350, 355, 356, 20 S.Ct. 446, 44 L.Ed. 500. It is also certain that the evidence presented in the New Jersey courts was adequate to sustain their finding of domicile in New Jersey, and consequently that the tax officials and courts of New Jersey did not act in violation of law for want of adequate evidence to support the finding of domicile there. And in denying certiorari the Supreme Court must also have concluded that the mere fact that the respective tax officials and courts of the two states had determined that the domicile of Dorrance, at the time of his death, was in their respective states, and that such determinations, assessments, and collection of the two taxes, based on inconsistent determinations, was not in violation of the due process and equal protection clauses of the Fourteenth Amendment. It is inconceivable that they would have denied certiorari if they had regarded the mere determination of inconsistent domiciles in the two states a violation of the Fourteenth Amendment. The evidence introduced and considered in the proceedings in both states was conflicting and the error, if any, was a judicial one.

We recognize that the mere denial of a petition for certiorari by the Supreme Court cannot be regarded by us as determinative of the questions therein raised; but, in view of the action of the Supreme Court in that case and what has been above said bearing upon the questions there involved, we think that the allegations in the complaint of mere inconsistent determinations of domicile resulting in two taxes by sovereign states are not allegations of a violation of the Fourteenth Amendment; and, there being no claim that the laws under which the tax officials acted were unconstitutional and no allegations in the bill that, in determining the question of domicile, they acted without adequate proof and in violation of law, the bill does not state a cause of action against the officials as individuals, but as representatives and agents of their respective states and cannot be maintained.

If the bill could be regarded as brought against the tax officials as individuals and not as representatives and agents of their states on the ground that both sets of officials acted arbitrarily and without adequate evidence in determining domicile, we are further of the opinion that the officials of California, as individuals, can-

not be regarded as having adverse claims or demands against the officials of Massachusetts, as individuals, or vice versa; and that the claimants here sought to be impleaded are the states of California and Massachusetts for taxes due them, not the officials personally.

Then, again, the Interpleader Act contemplates that the District Court, having determined a controversy between the adverse claimants and in favor of one of them, may order the complainant to pay to the successful party the amount of his claim and, payment having been made, enter a decree of acquittance discharging the complainant from the claim of the defeated party, as well as that of the successful one. If in this case the District Court should find that Mr. Hunt, at the time of his death, was domiciled in Massachusetts and not in California, and if the officials of California, as individuals and not as representatives and agents of California, were the only parties before the court, it would have no authority or jurisdiction over the state of California entitling it to discharge its tax claim against the complainant as executor of Mr. Hunt's estate. The interest of the state in the tax is of such a nature that a final decree cannot be made without affecting that interest. And, inasmuch as the Interpleader Act (section 24, subd. 26(d), 28 U.S.C.A. § 41(26) (d) and the complaint contemplate a discharge of the complainant from liability to both impleaded parties, which cannot be done unless the real claimants, the states, are before the court as such or by their duly authorized agents and representatives, this proceeding, if the impleaded respondents are both sued as individuals, is not authorized by that act, and the District Court would be without jurisdiction. Cunningham v. Macon & Brunswick R. Co., 109 U.S. 446, 451, 456, 457, 3 S.Ct. 292, 609, 27 L.Ed. 992. Missouri v. Fiske, 290 U.S. 18, at page 28, 54 S.Ct. 18, 21, 78 L.Ed. 145.

The order of the District Court granting a temporary injunction is vacated and the case is remanded to that court, with directions to dismiss the bill of complaint for want of jurisdiction.

MORTON, Circuit Judge (dissenting).

I agree that the Interpleader Act as amended is broad enough to cover the present case of conflicting claims to an estate tax which can be justly collected by only one of the claimants. But I do not think, as my brethren hold, "that the claimants here sought to be impleaded are the States of California and Massachusetts for taxes due them, not the officials personally," and that the act is on that ground unavailable. While the bill might be more clearly and definitely phrased, I understand it to allege that the tax officials of both California and Massachusetts are claiming an estate tax on the estate of decedent, Hunt; that only one such tax can legally be collected, and that plaintiffs are ready to pay it; and that the claim made by each state official is wholly unwarranted in law, is without legal justification under any statute, and violates the Fourteenth Amendment. It is characteristic of bills in the nature of interpleader under this statute that the plaintiff concedes indebtedness to one or the other of the claimants, but denies indebtedness or obligation to each one separately.

I take it as settled by First National Bank v. Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401, that no state may impose an estate tax on the estate of a decedent unless he was domiciled within its borders. To do so is unconstitutional. Plainly, if Hunt was domiciled in Massachusetts, then California tax officials are acting not only illegally, but unconstitutionally, in undertaking to tax his estate— and vice versa. I also take it to be settled that a state official, who takes, or threatens to take, action which is unconstitutional or without any warrant in law, may be enjoined. He is not the state for the purpose of such illegal action. Sterling v. Constantin, 287 U.S. 378, 393, 53 S.Ct. 190, 193, 77 L.Ed. 375. In Greene et al., Board of Valuation and Assessment of the State of Kentucky v. Louisville, etc., Railroad Company, 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88, the plaintiffs were, as the title of the case indicates, the Taxation Board of the state of Kentucky, but they were held liable to suit, and it was said that the liability to suit of such officials was not confined to cases where they were attempting to enforce an unconstitutional statute. "A valid law may be wrongfully administered by officers of the state, and so as to make such administration an illegal burden and exaction upon the individual." Reagan v. Farmers Loan & Trust Co., 154 U.S. 362, 390, 14 S.Ct. 1047, 1051, 38 L.Ed. 1014. See too Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255.

A state official who is acting illegally and without jurisdiction, as both these tax officials are alleged to be acting and one of them concededly is acting, cannot successfully maintain that the Eleventh Amendment bars any suit against him. As to one or the other of the claimants, the plaintiff's allegation that he is acting unconstitutionally and in violation of law is bound to fail, and as to that one the suit will then be dismissed because he will be, legally speaking, the state, of which he is an official acting in the proper performance of his legal duty; as to the other, it will appear that he is acting unconstitutionally and illegally. As I have said, such a result is inherent in suits in the nature of interpleader, that one claimant is adjudged to have a good claim against the plaintiff, and the other not. Jurisdiction depends on the allegations of the bill against each claimant.

It has been said on the highest authority that "Taxation is an intensely practical matter, and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences." McReynolds, J., Farmers' Loan & Trust Co. v. Minnesota, 280 U.S. 204, 212, 50 S.Ct. 98, 100, 74 L.Ed. 371, 65 A.L.R. 1000. Considering the recognized defect in our system of taxation which this statute is designed to cure, the example of shocking injustice to which it has led in the Dorrance Case, 116 N.J.Law, 362, 184 A. 743; 309 Pa. 151, 163 A. 303; 298 U.S. 678, 56 S.Ct. 949, 80 L.Ed. 1399, which is a reproach to our law, and the constant threat of similar injustice in all cases in which there is a dispute as to domicile, I think this statute should receive a liberal interpretation, and that, on points which are at best rather technical and procedural in character, doubt should be resolved in favor of jurisdiction under this statute, which appears to be the only practicable method of remedying the evil. See 45 Yale Law Journal, 1173, discussion of this statute by Prof. Chaffee, and 49 Harvard Law Review, 1378, a note on this statute in tax cases. One of the claimants, Mr. Long, Tax Commissioner of Massachusetts, regards the considerations just mentioned as so weighty that he makes no objection on jurisdictional grounds and approves the practice of submitting such cases of disputed domicile to the impartial determination of the federal courts. Various technical objections made by the appellant seem to me to have been fully and correctly dealt with by Judge Brewster in the District Court, whose opinion it is unnecessary to restate. I think the judgment appealed from should be affirmed.