## TRACY v. GINZBERG.

### ERROR TO THE SUPREME JUDICIAL COURT OF THE STATE OF MASSACHUSETTS.

No. 204.    Argued February 26, 1907.—Decided March 18, 1907.

The decision of a state court involving nothing more than the ownership of property, with all parties in interest before it, cannot be regarded by the unsuccessful party as a deprivation of property, without due process of law, simply because its effect is to deny his claim to own such property. The Fourteenth Amendment did not impair the authority of the States to determine finally, according to their settled usages and established modes of procedure, such questions, when they do not involve any right secured by the Federal Constitution or by any valid act of Congress, or by any treaty.

189 Mass. 260, affirmed.

THIS suit was instituted in the Supreme Judicial Court of Massachusetts by the plaintiff in error, a citizen of New York, against the defendant in error, a citizen of Massachusetts, individually and as trustee to H. C. Long & Company, composed of H. C. Long and Frank A. Sanderson.

The case made by the bill of complaint is as follows: On the twenty-third of December, 1902, the plaintiff sold to Long and Sanderson the personal property used in carrying on hotel business at a certain place in Boston, and assigned to them the lease of the realty occupied by the hotel. As partial payment therefor he took back a mortgage on the personal property for the sum of $7,500, running to the James Everard's Breweries, a corporation of New York. The mortgage covered not only

a part of the purchase price, but also $3,000 in cash, which the plaintiff paid for the liquor license, which, on or about the above date, he procured to be assigned to Long and Sanderson and to himself, as joint owners, and also the sum of $1,400 in cash, which the plaintiff paid to the city of Boston as a fee for the liquor license issued by the board of police of that city to Long and Sanderson and to the plaintiff. That license expired by limitation on May 1, 1903.

In consideration of the advance, by plaintiff's procurement, of the above sums of $3,000 and $1,400, Long and Sanderson, on the above date, by writing, assigned their right, title and interest in said license to the plaintiff, covenanting and agreeing that all future applications for renewals of the license should be in the names of Long and Sanderson and the plaintiff, and that upon such renewal being granted they would assign, transfer and set over any such license.

Long and Sanderson being without money for the purpose, the plaintiff paid $1,400 to the city as the renewal fee, and thereupon a new first and fourth class license was issued by the board of police to Long and Sanderson and the plaintiff to sell intoxicating liquors in the said hotel building. This license was taken by the plaintiff into his possession, and he had it in his possession at the bringing of this suit.

On the payment of the license fee for 1903–1904 Long and Sanderson, by an instrument of writing dated April 24, 1903, assigned, transferred and set over to the plaintiff their interest in that license, and further agreed to assign and set over to him their interest in any renewal of the license so long as they should be indebted to James Everard's Breweries. The plaintiff alleged that that assignment was for present and valuable consideration, and that by reason thereof he became the sole owner of the license.

Long and Sanderson were adjudged bankrupts on the twenty-third of July, 1903, being at the time indebted, and are still indebted, to James Everard's Breweries in a sum exceeding $7,000.

The number of first and fourth class licenses in Boston is limited by law and are substantially all issued each year, so that a new license cannot be issued until an old license is cancelled.  Old licenses are of great value to persons who desire to engage in the liquor business in Boston.  They sell from $3,000 to $5,000 to persons who present them for cancellation together with an application for a new license to themselves.

Because of the large surrender value of old licenses and of the long-continued custom of reissuing licenses to old holders until refused for cause, such licenses have been recognized by courts of Massachusetts as property rights, and the powers of the board of police in dealing with them have been limited to the exercise of the sound discretion within the limits established by the laws of the Commonwealth.

The defendant Ginzberg, having full knowledge of the above facts, procured the board of police, on or about the first of April, 1904, to cancel the plaintiff's license.  This was done without notice to plaintiff or hearing on any charge of the violation of the terms of the license.  With the assistance of the police board, prior to the cancellation of the license, Ginzberg sold the license for $3,000, which he refused to pay over to the plaintiff.  He also collected from the city the sum of $200 as a rebate upon the plaintiff's license, and refused to account for any sum to the plaintiff whatever.  In the matter complained of Ginzberg acted beyond his powers as trustee of the bankrupt estate and without warrant of law disposed of [to one O'Hearn] a valuable privilege belonging to the plaintiff, and has procured the destruction and cancellation of the plaintiff's valuable rights.

The relief prayed was that the title of the plaintiff to the first and fourth class liquor license issued to Long and Sanderson and himself be established; that Ginzberg be ordered to account for the sums received by him as the proceeds of the plaintiff's license and be required to pay the same over to plaintiff; that the plaintiff's losses and damages by reason of the acts of defendant be established, and that he be ordered

to pay the same; that execution issue against Ginzberg, in-
dividually, for such sums as may be found due to the plaintiff.
by reason of his wrongful interference with plaintiff's prop-
erty; that if upon hearing it should appear that defendant
acted within his duties as trustee of the bankrupt estate, that
the decree run against him as such trustee but without execu-
tion thereon; and that the plaintiff have such other and further
relief as may be just.

Such is the case made by the bill. After answer and replica-
tion the evidence was taken by a special commissioner, to be
reported to the full court. In its finding of facts the court
said: "In the case at bar, the police commissioners were satis-
fied that the name of Tracy was inserted in the two licenses
to secure to his principal the debt, or part of the debt, due
from the defendants Long & Sanderson; that he was not a
partner in the liquor business, and for that reason the police
commissioners gave a preference to O'Hearn, who was nomi-
nated by the trustee in bankruptcy, with [out] the consent, or
against the objections, of Tracy, in deciding to whom a license
should be issued on the vacancy caused by Long & Sanderson
going out of business. The trustee received three thousand
dollars for the nomination by him, and I find that it is, in fact,
the value of such a nomination. It follows that the three
thousand dollars received by the defendant was received for
something which he had, and not for anything which the plain-
tiff had, and the defendant is entitled to have the bill dis-
missed with costs." By the final decree the bill was dismissed
and the case carried before the full court, which affirmed the
decree of the trial court.

The Supreme Judicial Court of Massachusetts affirmed the
judgment, holding that to sell intoxicating liquor was a per-
sonal privilege, valuable as property, in a certain sense, for
the personal use of the holder but not assignable or transferable
by him in any way; and that "the value of the release is recog-
nized as depending wholly upon the practice of the police
commissioners, and because there is no legal right to assign

· the privileges of such a license, and the police commissioners refuse to be bound by assignments, or to recognize at all assignments for security, the court holds that a holder of an assignment for security has no rights under the assignment." Further: "In the present case the release or assignment of the licenses by the bankrupts to one who wishes to obtain licenses for the next year, induced him to pay the trustee in bankruptcy three thousand dollars. The money so received was not for any property owned by the plaintiff. It was for a position before the police commissioners, from which the payor had reasonable ground to expect their favorable action. The plaintiff could not control this position, or do anything that would induce the payment by O'Hearn of the money which the defendant received. Upon the facts shown, the board of police commissioners did not consider the insertion of the plaintiff's name in the original license as affecting their right to issue new licenses. It is plain that they were right as regards the licenses for the ensuing year. Whether they were right or not in regard to the plaintiff's relation to the old licenses is immaterial, for it is plain that the money received by the defendant was not paid on account of the plaintiff's interest, but on account of what the defendant did in enabling O'Hearn to obtain the new licenses." *Tracy* v. *Ginzberg*, 189 Massachusetts, 260.

*Mr. H. J. Jaquith*, with whom *Mr. Thomas J. Barry* was on the brief, for plaintiff in error:

The present use of the term "license," as an act of government, in many respects is synonymous with "franchise."

Kent defines a franchise as a privilege conferred by grant from government and vested in individuals. 3 Kent Com. 458; *Gibbons* v. *Ogden*, 9 Wheat. 1, 213.

A license for a stated period and for a valuable consideration cannot be revoked except for breach of conditions. *Davis* v. *Townsend*, 10 Barb. 333, 343; *Cook* v. *Stearns*, 11 Massachusetts, 533, 537; *Commonwealth* v. *Moylan*, 119 Massachusetts, 109. It is a franchise. *State* v. *C., M. & St. P. Railway*, 56 Wis-

consin, 256, 259; *Wiggins Ferry Co.* v. *East St. Louis,* 102 Illinois, 560, 576; *Hancock* v. *Singer Mfg. Co.,* 62 N. J. Law, 289; 335; *Logan* v. *Pyne,* 43 Iowa, 524; *Commonwealth* v. *Standard Oil,* 101 Pa. St. 119, 145; *State* v. *Schlier,* 59 Tennessee, 280, 286.

The power to mortgage is coextensive with the power to alienate, and is an incident that cannot be divorced from ownership. *Commonwealth* v. *Smith,* 10 Allen, 448.

The only limitation upon this power is that the holder of a franchise or license for the benefit of the public cannot do anything to disqualify him from performing his public duties. *Evans* v. *Boston Heating Co.,* 157 Massachusetts, 37.

A license is property. The word property is legally understood to include every class of acquisitions which a man can own or have an interest in. *In re Fixen,* 102 Fed. Rep. 295, 296; *In re Emrich,* 101 Fed. Rep. 231 (market license); *In re Gallagher,* 16 Blatchf. 410; *Fisher* v. *Cushman,* 103 Fed. Rep. 860, 864, 865; *In re Becker,* 98 Fed. Rep. 407; *In re Brodbine,* 93 Fed. Rep. 643.

Other privileges are also regarded as property. *In re Hurlbutt Hatch Co.,* 135 Fed. Rep. 504; *Hyde* v. *Woods,* 94 U. S. 523, 525 (stock exchange); *Sparhawk* v. *Yerkes,* 142 U. S. 1, 12; *In re Ketchum,* 1 Fed. Rep. 840; *In re Warder,* 10 Fed. Rep. 275.

A privilege is intangible property, and is recognized and protected as property. *Adams Ex. Co.* v. *Ohio,* 166 U. S. 185, 218, 219.

The Massachusetts Supreme Judicial Court does not seem to have fully determined for itself in just what position before the law the capital invested in licenses stands. Surely the several millions of capital invested in licenses in Boston is within the protection of the law. *Tehan* v. *Court,* 191 Massachusetts, 92.

A trustee in bankruptcy is bound by all the agreements of the bankrupt as fully as the bankrupt, except as to frauds and preferences and executory contracts; and in taking over property or property rights, he takes them subject to such liens,

encumbrances, or assignments as existed prior to the bankruptcy, provided they are not obnoxious as frauds or preferences. *Mitchell* v. *Winslow,* 2 Story, 630; *S. C.,* Fed. Cas. 9,673; *Ex parte Newhall,* 2 Story, 360; *S. C.,* Fed. Cas. 10,159; *Fletcher* v. *Morey,* 2 Story, 555; *S. C.,* Fed. Cas. 4,864; *Windsor* v. *Kendall,* 3 Story, 507; *S. C.,* Fed. Cas. 17,886; *Windsor* v. *McClellan,* 2 Story, 492; *S. C.,* Fed. Cas. 17,887; *Ex parte Dalby,* 1 Lowell, 431; *S. C.,* Fed. Cas. 3,540; *Potter* v. *Coggeshall,* Fed. Cas. 11,322; *Coggeshall* v. *Potter,* Fed. Cas. 2,955; *Williamson* v. *Colcord,* Fed. Cas. 17,752.

These cases have been approved and followed by the United States Supreme Court and by the courts of most of the States. *Thompson* v. *Fairbanks,* 196 U. S. 516, 526.

Upon these authorities the plaintiff was entitled to the aid of a court of equity to enforce his rights against Long & Company as fully as though they had not gone into bankruptcy.

*Mr. Alfred W. Putnam,* with whom *Mr. William B. Sullivan* was on the brief, for defendant in error:

A liquor license, of course, only purports to grant to the holder the privilege of conducting for a limited period of time what would otherwise be an unlawful business. The very most that Tracy could have claimed as of right was that he was permitted to engage in the liquor trade in the city of Boston.

That privilege is the only "right" which he can fairly and reasonably assert that he acquired as a direct licensee.

The permission to sell intoxicating liquor is not a right or a privilege within the meaning of the Fourteenth Amendment of the Federal Constitution. *Crowley* v. *Christensen,* 137 U. S. 86; *Giozza* v. *Tiernan,* 148 U. S. 657; *Bartemeyer* v. *Iowa,* 18 Wall. 129.

A license is not a contract and confers no contractual rights upon the holder. *Calder* v. *Kurby,* 5 Gray (Mass.), 597; *Le Croix* v. *County Commissioners,* 50 Connecticut, 321; *Board of*

*Excise* v. *Barrie,* 34 N. Y. 657; *Sprayberry* v. *Atlanta,* 87 Georgia, 120; *Stone* v. *Mississippi,* 101 U. S. 814–820.

The revocation of a license does not constitute taking of property without due process of law. *Board of Excise* v. *Barrie,* 34 N. Y. 657; *Sprayberry* v. *Atlanta,* 87 Georgia, 120; *Schwuchow* v. *Chicago,* 68 Illinois, 444.

The fund of $3,000 is rightfully held by the trustee in bankruptcy as assets of the bankrupt's estate. It does not lie in the mouth of plaintiff in error to assert that this money is not properly assets of the estate, nor to accuse the defendant in error of being an intermeddler if he fails to prove a better title to the money.

Money realized from the nomination for a license is assets of a bankrupt estate. *In re Fisher,* 98 Fed. Rep. 89 (D. C. Mass.); *Fisher* v. *Cushman,* 103 Fed. Rep. 860 (C. C. A.); *In re McArdle,* 126 Fed. Rep. 442 (D. C. Mass.).

Mr. Justice Harlan, after making the foregoing statement, delivered the opinion of the court.

The plaintiff insists that the action of the police commissioners deprived him of property without due process of law. The answer to this contention is that the expectation called a right or property was of the board's creation and therefore subject to the limitations which the board imposed.

The plaintiff also insists that by the judgment of the Supreme Judicial Court of Massachusetts he has been deprived of his property without the due process of law guaranteed by the Fourteenth Amendment of the Constitution of the United States. This proposition is without merit. Within the meaning of that amendment, the court, by its judgment, did not deprive the plaintiff of property without due process of law. He sought a decree adjudging that he was entitled to the money received by Ginzberg from O'Hearn. The court, proceeding entirely upon principles of general and local law, and giving all parties interested in the question an opportunity to be

heard, decided that plaintiff had no right to that money. The decision of a state court, involving nothing more than the ownership of property, with all parties in interest before it, cannot be regarded by the unsuccessful party as a deprivation of property without due process of law, simply because its effect is to deny his claim to own such property. If we were of opinion, upon this record, that the money received by Ginzberg from O'Hearn really belonged to Tracy—upon which question we express no opinion—still it could not be affirmed that the latter had, within the meaning of the Constitution, and by reason of the judgment below, been deprived of his property without due process of law. Under the opposite view every judgment of a state court, involving merely the ownership of property, could be brought here for review—a result not to be thought of. The Fourteenth Amendment did not impair the authority of the States, by their judicial tribunals, and according to their settled usages and established modes of procedure, to determine finally, for the parties before it, controverted questions as to the ownership of property, which did not involve any right secured by the Federal Constitution, or by any valid act of Congress, or by any treaty. Within the meaning of that amendment, a deprivation of property without due process of law occurs when it results from the arbitrary exercise of power, inconsistent with "those settled usages and modes of proceeding existing in the common and statute law of England before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country." *Bank of Columbia* v. *Okely,* 4 Wheat. 235, 244; *Murray's Lessee* v. *Hoboken* &c., 18 How. 272. It cannot be said that the state court in this case, by its final judgment, departed from those usages or modes of proceeding.

The judgment is

*Affirmed.*