Edward James **KENNEY, Jr.**,
Plaintiff,

v.

**Raymond W. FOX, Defendant.**
Civ. A. No. 2542.

United States District Court
W. D. Michigan, S. D.
June 3, 1955.

---

Edward James Kenney, Jr., Benton Harbor, Mich., in pro. per.

Gould Fox, Kalamazoo, Mich., for defendant.

STARR, Chief Judge.

### On Plaintiff's Motion for a More Definite Statement

Rule 12(e) as amended of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part:

> "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired."

Rule 7 as amended of the Federal Rules of Civil Procedure, entitled "Pleadings Allowed; Form of Motions", provides in part:

> "There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if leave is given under Rule 14 to summon a person who was not an original party; and there shall be a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

Rule 12(e) as amended, which I quoted does not provide for a responsive pleading to a motion to dismiss. Therefore, as a responsive pleading to defendant's motion to dismiss is not permitted or required in the present case under Rule 12(e), the plaintiff is not entitled to a more definite statement with respect to that motion. See Cyclopedia of Federal Procedure, 3d Ed. § 15.66, pages 78 and 79; and § 15.298, page 276.

Furthermore, and probably more important, is the fact that the defendant's motion to dismiss because the complaint fails to state a claim against the defendant upon which relief could be granted, presents only a simple and single question or issue. That is, assuming the allegations of material facts to be true, does the complaint state a claim upon which relief could be granted against the defendant? Therefore, as this motion to dismiss presents only a single, definite, and certain question, it requires no further elucidation or explanation.

For the reasons which I have stated the plaintiff's motion for a more definite statement as to the defendant's motion to dismiss is denied.

### On Defendant's Motion to Dismiss Complaint

This motion by the defendant to dismiss the present action should be determined promptly, and from memoranda which I have prepared in the course of preparation for this hearing I will now dictate my opinion from the bench.

In order that the record of this hearing and the court's holdings may be complete and understandable, I will set forth briefly the factual background in the case of Edward James Kenney, Jr., v. Dr. Roy A. Morter and others, instituted in the circuit court of Kalamazoo County, and out of which case this present action arises.

It appears that in November, 1950, the probate judge of Berrien County, Michigan, entered an order committing Edward James Kenney, Jr., the plaintiff in the present action, to the Kalamazoo State Hospital, and that he was detained in the state hospital until about August, 1952. It further appears that in a subsequent proceeding instituted by Kenney in the circuit court of Berrien County, an order or decree was entered in October, 1954, declaring his

commitment to the state hospital in 1950 to be null and void, and enforcement of said order of commitment was permanently enjoined.

It further appears that in July, 1954, Kenney began a civil action for money damages in the circuit court of Kalamazoo County, Michigan, against Dr. Roy A. Morter, medical superintendent of the Kalamazoo State Hospital, and against other doctors and employees of that hospital, alleging, among other things, false imprisonment and abuse and improper treatment. It appears that Dr. Morter, one of the defendants in that action in Kalamazoo County, filed a motion to dismiss the action. It further appears that Judge Raymond W. Fox, the defendant in the present action in this court, is the judge of the circuit court of Kalamazoo County and heard Dr. Morter's motion to dismiss Kenney's action against him. It further appears that Judge Fox rendered his decision, granting Dr. Morter's motion to dismiss the action against him.

Plaintiff Edward James Kenney, Jr., on December 14, 1954, filed complaint in the present action in this court against Judge Fox, charging that in dismissing Kenney's action in the circuit court of Kalamazoo County against Dr. Morter and others, Judge Fox acted legislatively and without jurisdiction, and that in dismissing that action Judge Fox denied him due process of law and equal protection of law, and violated his constitutional rights under the Fourteenth Amendment of the Constitution of the United States. In his present action in this court plaintiff Kenney asks for money damages from Judge Fox, in the sum of $123,000 or, in the alternative, for a declaratory decree determining Judge Fox' dismissal of Kenney's suit in the circuit court of Kalamazoo County against Dr. Morter and others to be null and void.

Plaintiff Kenney bases jurisdiction of his present action in this court on 28 U.S.C.A. § 1343 as amended, which provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

"(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

He also bases jurisdiction of the present action on 28 U.S.C.A. § 2201, which relates to declaratory judgments and which provides:

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States and the District Court for the Territory of Alaska, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Plaintiff Kenney bases his claim to recovery in the present action on the federal civil rights statute, 42 U.S.C.A., § 1983 (formerly 8 U.S.C.A., § 43), which provides:

"Every person who, under color of any statute, ordinance, regula-

tion, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In his complaint against Judge Fox in the present action plaintiff Kenney contends in substance that Judge Fox, by dismissing his suit against Dr. Morter and others in the circuit court of Kalamazoo County, deprived him of due process of law and equal protection of law, and deprived him of rights, privileges or immunities secured by the Constitution of the United States and laws enacted by the Congress, and that Judge Fox should be held liable to him for money damages for such alleged deprivations. As I stated before, the defendant, Judge Fox, has filed a motion to dismiss the complaint in the present action, on the ground that the complaint fails to state a claim against him upon which relief can be granted.

■■■ At the outset, this court recognizes that action of state courts and state judicial officers in their official capacities is regarded as the action of the state within the meaning of the Fourteenth Amendment, and that the federal guarantee of due process extends to state action through its judicial as well as through its legislative, executive or administrative branch of government. See Shelley v. Kraemer, 334 U.S. 1, pages 14 to 17, 68 S.Ct. 836, 92 L.Ed. 1161.

■ Even though the judicial decision of Judge Fox dismissing plaintiff Kenney's circuit court suit in Kalamazoo County might be held to constitute state action, that fact does not determine the question in the present case as to whether Judge Fox could be held liable in money damages for such judicial decision, which Kenney alleges was erroneous. It should be noted at this point that no appeal was taken by plaintiff Kenney from Judge Fox' decision granting the defendant's motion to dismiss the Kalamazoo County suit and therefore such decision stands as proper, and as the law of that case, until reversed by a higher or appellate court. The principal question in the present case is whether, assuming the plaintiff's allegations of material facts, but not his allegations of mere conclusions, to be true, does the complaint state a claim upon which relief could be granted against Judge Fox. In other words, the principal question in the present case is whether, assuming only for the purpose of defendant's motion that Judge Fox' decision dismissing the Kalamazoo County case was erroneous, as contended by plaintiff, would such erroneous decision entitle plaintiff Kenney to recover money damages from Judge Fox.

It is clear that Judge Fox, in rendering his opinion and decision granting defendant Dr. Morter's motion to dismiss the Kalamazoo County case, was acting in his official and judicial capacity as a judge of a state court, and there is no showing that he was not acting with the utmost good faith.

■ The law has long been established in this state and in the United States that a judge acting with authority in his official and judicial capacity cannot be held liable for damages by reason of his judicial decision, even though his decision might, upon appeal, be reversed and be held to be erroneous. Because of the nation-wide importance of the principle of judicial immunity, in view of the federal civil rights statutes, I will discuss the many applicable authorities at some length.

The case of Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242, certiorari denied 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618, was an appeal from a judgment dismissing the complaint in a civil action under the civil rights act, 8 U.S.C.A. § 43 et seq. (now 42 U.S.C.A. § 1983 et seq.), for failure to state a claim upon which relief could be granted. Jurisdiction in that case was asserted under

28 U.S.C.A. § 1343. The Moffett case grew out of many years of litigation in the probate courts and other state courts of Missouri, Kansas, and Oklahoma, involving the estates of John Moffett and Thomas Moffett. In affirming the district court's dismissal of the complaint, the appellate court said in 187 F.2d at pages 248 and 249:

"Plaintiff's allegations that the decisions of the various State courts in litigation in which she was involved were void or arbitrarily or willfully made merely expresses an opinion not uncommon among defeated litigants, and, as appears from the face of the complaint, not entertained by the State Supreme Courts which reviewed the judgments. The charge that the State court judgments were intentionally and purposefully against plaintiff, aside from the fact that the language used would apply equally as well to the decision of any court, right or wrong, adds nothing to the force or effect of the complaint. Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. But assuming that the State court proceedings were not within the jurisdiction of the courts which decided them, or that they were contrary to State law or procured by fraud or perjury, they were not void but, at most, erroneous. Nothing in the Civil Rights Act gives a Federal court jurisdiction to review them. * * *

"Here the complaint fails to show that plaintiff has suffered or will suffer the deprivation of a Federal right. The Federal Constitution does not guarantee a citizen against loss through fictitious or fraudulent litigation or through erroneous decisions of State courts on questions of State law nor, as we have seen, does it guarantee uniformity of decisions on the part of State courts nor protect the citizen against the invasion of private rights by private parties."

The case of Bottone v. Lindsley, 10 Cir., 170 F.2d 705, was an action for damages under the civil rights act, 8 U.S.C.A. § 43 (now 42 U.S.C.A. § 1983) against the administrator of an estate and the lawyers and the judge who participated in litigation involving the estate. In affirming the district court's dismissal of the case the appellate court said at page 707:

"It is alleged, however, that in the performance of the acts complained of, each of the defendants acted as an officer of the Colorado state court, and for the purpose of considering the legal sufficiency of the complaint, we will assume the legal premise that the judge and the lawyers acted under color of state law. See Moyer v. Peabody, 212 U. S. 78, 29 S.Ct. 235, 53 L.Ed. 410; Picking v. Pennsylvania Railroad Co., 3 Cir., 151 F.2d 240, at page 250.

"It is conceivable that persons, either individual or acting in concert might so use the state judicial process as to deprive a person of his property without due process of law, or of equal protection of the laws, yet we are certain that to make out a cause of action under the Civil Rights Statutes, the state court proceedings must have been a complete nullity, with a purpose to deprive a person of his property without due process of law. To hold otherwise would open the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision. 'The Fourteenth Amendment did not alter the basic relations between the States and the national government.' Screws v. United States, 325 U.S. [91] at page 109, 65 S.Ct. [1031] at page 1039, 89 L.Ed. 1495. * * * Nor does it 'assure uniformity of decisions or immunity from merely erroneous action * * *.' See Justice Frankfurter concurring in

Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed. 497. See also Moyer v. Peabody [212 U. S. 78, 29 S.Ct. 235, 53 L.Ed. 410]."

In the case of Francis v. Lyman, D. C., 108 F.Supp. 884, the plaintiff brought action under the civil rights act against a state court judge and others to recover damages for an alleged deprivation of his constitutional rights, in that he was confined as a defective delinquent on an order issued by the judge without notice or hearing. The court held that the commitment of plaintiff as a defective delinquent without notice or hearing was a judicial determination which deprived plaintiff of his liberty without due process. However, in granting the defendant judge's motion to dismiss the action for damages and for summary judgment, the court further held that the federal civil rights act did not abolish the protection placed around judges by the common law so as to subject a state judge to liability for damages whenever, by a judicial action within his authority, a person had been deprived of a constitutional right. In affirming the judgment of the district court dismissing the plaintiff's action for damages against a state court judge in the above case of Francis v. Lyman, the Court of Appeals for the First Circuit in Francis v. Crafts, 203 F.2d 809, 812, discussed and quoted with approval from the case of Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646, as follows:

" 'The principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country.' Further, the Court held that this immunity is not to be defeated by allegations that the judge acted maliciously or corruptly or

from other improper motives. The reason of policy for this broad immunity was stated as follows, 13 Wall. at page 349: 'If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party—and that judge perhaps one of an inferior jurisdiction—that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party.' "

The case of Ginsburg v. Stern, D.C., 125 F.Supp. 596, was an action by a Pittsburgh lawyer against the chief justice of the Supreme Court of Pennsylvania and the prothonotary, that is, the chief clerk, of that court. The plaintiff based his action on the civil rights statute as amended, 42 U.S.C.A. §§ 1983 and 1985, and charged the defendants with denying him equal protection of the law. I will quote at some length from the court's opinion dismissing the action, as it discusses the effect of the civil rights statutes in relation to the immunity of judges from civil liability for their judicial acts. The court said in part, at pages 600 to 602:

"Prior to the Civil Rights Statutes, in our system of jurisprudence it, therefore, appeared [that] a time-honored immunity of judges existed from civil liability for their official or judicial acts, no matter how erroneous, malicious or corrupt they may have been. Bradley v. Fisher, 13 Wall. 335, 349, 80 U.S. 335, 349, 20 L.Ed. 646; Papagianakis v. The Samos, 4 Cir., 186 F.2d

257; Tinkoff v. Holly, 7 Cir., 209 F.2d 527. * * *

"The question now posed before this court is whether or not such immunity continues in effect after the enactment of the Civil Rights Statutes.

"As an aftermath of Civil War and national convulsion, the Civil Rights Statutes were forged by the great statesmen and lawyers of both Houses of Congress.

"It must be considered whether these stalwart defenders of constitutional government intended to employ the Civil Rights Statutes as a bludgeon to strike asunder the fundamental and basic concept of judicial independence—which by and large feeds life blood to the arteries of the organism of free government.

"The apparently sweeping and unqualified language of the old Civil Rights Act, 8 U.S.C.A. § 43 and more recently changed to 42 U.S. C.A. §§ 1983, 1985, 1986, as amended, seems to say that every person in official position, whether executive, legislative, or judicial, who under color of state law subjects or causes to be subjected any person to the deprivation of any rights secured by the Constitution of the United States, shall be liable in damages to the person injured. The enactment in terms contains no recognition of possible defenses or exemptions, by way of privilege, even where the defendants may have acted in good faith, in compliance with what they believed to be their official duty. Reading the language of the Act in its broadest sweep, it would seem to make no difference that the conduct of the defendants might not have been tortious at common law; for the Act, if read literally, creates a new federal tort, where all that has to be proved is that the offender as a result of his conduct under color of state law has in fact caused harm to the plaintiff by depriving him of rights secured by the Constitution of the United States and the Civil Rights Statutes.

"Fortunately Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, has relieved us of the necessity of giving the Civil Rights Act such an awesome and unqualified interpretation. * * *

"If plaintiff's thesis requiring the imposition of civil liability upon judges in the performance of their civil duties were to be given effect, utter chaos would pervade the judicial system. Judges would render decisions under the constant fear of civil suits, and the administration of justice would cause judges to temper their decisions with the sole view of avoiding disgruntled litigants. Judges would require the constant service of members of the bar in defending their actions, and would always face the peril of showing favoritism toward those attorneys whose services they have been required to invoke. This necessity would again tend to convince an unsuccessful litigant that rights under the Civil Rights Statutes have been denied. In such cases where judges should disqualify themselves as when counsel had previously served in their behalf, circumstances would prove untenable in those numerous judicial districts where the complement of the court consists of a single judge. Indeed, judges not only would be confronted with the stark realism of having their savings and holdings frittered away in defending themselves against a multiplicity of frivolous and unfounded civil suits, but would also suffer the embarrassment and degradation of defending themselves against the sniping and collateral attacks of dissatisfied litigants. It would create an endless chain and vicious circle to which no solution or correction could ever be attained.

"The independence of the judiciary would be of little value if judges could be subjected to the cost and inconvenience and distractions of a trial upon the conclusions of a case, or to the hazard of a judgment against them based upon a jury's speculation as to motives."

In the case of Morgan v. Sylvester, D.C., 125 F.Supp. 380, the plaintiff asserted a claim under the civil rights act against various judicial, executive, and legislative officials of the State of New York. In dismissing the action the court said at pages 385 to 387:

"Judicial immunity is even more deeply rooted, and rests upon public policy considerations at least as compelling as that which supports immunity for legislators. It may be traced back to the earliest judicial records of the English courts. The necessity for absolute immunity of judges from civil suits was recognized from the earliest beginnings by American Courts as a concomitant of an independent judiciary.
\* \* \*

"This action is a clear attempt, despite plaintiff's assertion to the contrary, to obtain a review and a retrial of the State Court proceedings. The fact that a defeated litigant is prepared to charge a 'conspiracy' recklessly or otherwise and recite in haec verba the language of the Civil Rights Act does not give a right of review in the Federal Courts. To uphold the claim here advanced upon such conclusory allegations 'would open the door wide to every aggrieved litigant in a state court proceedings, and set the federal courts up as an arbiter of the correctness of every state decision.'

"This case demonstrates forcibly the wisdom of the public policy which grants immunity to judicial and other officials for acts performed in the discharge of their duties. If in circumstances such as this defendants may be made to answer for their determinations, not only would the independence of the judiciary be undermined, but a ready means would be at hand to paralyze the entire judicial system."

In the case of Griffin v. Connally, D.C., 127 F.Supp. 203, the plaintiff began an action against the defendant, a United States district judge, for money damages. The plaintiff had begun an action for damages in the district court against a college and its officers and trustees, and the federal district judge had sustained the defendants' motion in that case to quash service of process and also sustained the defendants' motion to dismiss that action. The plaintiff in the suit against the federal judge based his claim on the ground that the judge had wrongfully dismissed the plaintiff's action against the college and its officers and trustees. In dismissing the federal court action, the court said at page 205:

"Defendant's motion to dismiss is on the grounds that the complaint fails to state a claim against defendant upon which relief can be granted. The law is well settled and established that judges are exempt from liability in a civil action for acts done by them in the exercise of their judicial functions. No matter what their motives may be, they cannot be inquired into. The law on this subject is exhaustively treated in two cases recently decided by United States District Courts in the Southern District of New York and the Western District of Pennsylvania. It is interesting to note that in each of those cases the plaintiff appeared pro se. Cited are Morgan v. Sylvester, D.C., 125 F.Supp. 380, and Ginsburg v. Stern, D.C., 125 F. Supp. 596, and the many cases cited thereunder. Defendant's motion to dismiss should be granted and sustained."

In the case of Souther v. Reid, D.C., 101 F.Supp. 806, the plaintiff brought action against a judge of the county court of Arlington, Virginia, for damages on the ground that plaintiff was wrongfully arrested because of his fail-

ure to appear personally before the judge on a misdemeanor charge. Plaintiff alleged that the action of the judge was a denial to plaintiff of due process of law, in transgression of his civil rights. In granting the defendant judge's motion for summary judgment in his favor, the court said at page 807:

"Summary judgment must go for the defendant. In every respect the arrest was lawful. Authority, conferred by Va.Code 1950, § 19–154, to try a misdemeanor charge in the absence of the accused is not a right given him; it is a privilege accorded only to the court. It does not relax the defendant's obligation to appear in obedience to the mandate of the summons. Nor does the statute abridge the power of the court to require his submission in person to its jurisdiction—perhaps to answer its judgment. The plaintiff has not been deprived of due process, 'the law of the land' or of any Federal right.

"Another reason the complaint cannot be sustained is that the judge is not suable. He had exclusive original jurisdiction of the infraction charged. Even if the capias was unauthorized, it was but an erroneous exercise of power possessed, not an arrogation of power unpossessed. Under these conditions the motive prompting the exertion of the power becomes unimportant. Berry v. Smith, 148 Va. 424, 139 S.E. 252, 55 A.L.R. 279; Bradley v. Fisher, 13 Wall. 335 [80 U.S. 335], 20 L.Ed. 646; Papagianakis v. The Samos, 4 Cir., 186 F.2d 257. The same salutary public policy which created the doctrine of judicial immunity dictates that asserted liability under the Civil Rights Act should not be excepted from its protection. Bottone v. Lindsley, 10 Cir., 170 F.2d 705."

In the case of Ravenscroft v. Casey, 2 Cir., 139 F.2d 776, the plaintiff filed action against a police justice and a county judge and others to recover damages for alleged assault, false imprisonment, and malicious prosecution. In affirming dismissal of the action the court said at page 778:

"No cause of action is stated against the defendants Casey, Toucher, Koch and Bassett. They are protected by the fact that they were carrying out orders of County Judge Bailey. Whether his orders were correct or erroneous he had jurisdiction to make them and they provide immunity to the jail authorities who did nothing other than perform them. Marks v. Townsend, 97 N.Y. 590, 601; Land Finance Corp. v. Jacoby, 151 Misc. 159, 160, 272 N.Y.S. 318.

"Police Justice Hughes and County Judge Bailey are protected from civil liability since each acted as a judicial officer in a matter within his jurisdiction as such. * * * The same principle gives immunity to defendant Ferris, the district attorney."

See also Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Cawley v. Warren, 7 Cir., 216 F.2d 74; Francis v. Lyman, 1 Cir., 216 F.2d 583; Spears v. Spears, 6 Cir., 162 F.2d 345; Mitchell v. Greenough, 9 Cir., 100 F.2d 184; Harvard Law Review, Vol. 68, No. 7, May 1955, pages 1229 to 1240.

 The foregoing authorities which I have cited and discussed and other authorities too numerous to mention conclusively establish the law in this country that a judge acting in good faith within his jurisdiction in his official judicial capacity is immune from civil liability for damages, and that the federal civil right statutes have not removed or abolished this immunity.

The decision by Judge Fox dismissing plaintiff Kenney's civil action against Dr. Morter and others in the Kalamazoo circuit court stands correct and as the law of that case until reversed by an appellate or higher court. If plaintiff Ken-

ney was dissatisfied with that decision and considered it to be erroneous, his available and proper remedy was by appeal to the Supreme Court of Michigan. If aggrieved by the decision of the Michigan Supreme Court on appeal, he could then assert his claims of violation of his constitutional and civil rights in a petition to the Supreme Court of the United States for writ of certiorari to review the decision of the Michigan court.

Instead of pursuing his available and proper remedy by appeal to the Michigan Supreme Court, plaintiff Kenney began the present action for money damages against Judge Fox in this federal court, and he seeks to establish federal court jurisdiction by alleging as generalities and conclusions, without specification of supporting facts, that Judge Fox' decision in the state court case was erroneous and deprived him of his constitutional and civil rights.

To hold with plaintiff Kenney's contentions in the present case would, in effect, mean that any litigant dissatisfied with a state court decision could relitigate his dispute in a federal court merely by alleging as a conclusion that he had been deprived of his constitutional and civil rights. Furthermore, to hold with plaintiff Kenney's contention that a judge acting in good faith in his official judicial capacity could be held liable for money damages by reason of an alleged erroneous decision would, as stated in many decisions, create utter and complete havoc in our entire judicial system, which is the cornerstone of our democratic form and philosophy of government.

 The allegations in plaintiff's complaint in the present case fail to show that he has suffered or will suffer the deprivation of a constitutional or civil right. The Constitution does not guarantee the plaintiff as a citizen against loss through erroneous decisions of state courts, nor does it guarantee uniformity of decisions by state courts.

 In the present case plaintiff Kenney, despite his assertion to the contrary, is in effect appealing from a state court decision and seeking to obtain federal court review of a state court decision which was adverse to his contentions, and he is seeking to relitigate in this federal court the issues involved and determined in the state court action. It may be stated as a well-recognized general rule that it is not within the province of a federal court to review state court decisions.

The only authority cited by plaintiff Kenney that may be said to support his contentions in the present case is Picking v. Pennsylvania Railroad Co., 3 Cir., 151 F.2d 240. However, the factual situation presented in the Picking case clearly distinguishes it from the present case in this court. Furthermore, the holding in the Picking case is contrary to the great weight of authority and has been overruled by many subsequent decisions involving the civil rights statutes. Other authorities cited by the plaintiff do not sustain his contention that he is entitled to maintain the present action for money damages against Judge Fox by reason of an allegedly erroneous decision by Judge Fox.

In summary, the court concludes:

*First,* that defendant Judge Raymond W. Fox as circuit court judge had jurisdiction to hear and determine the defendants' motion to dismiss the action instituted by plaintiff Kenney against Dr. Morter and others in the circuit court of Kalamazoo County.

*Second,* that in rendering his decision dismissing the state court action Judge Fox was acting in his official and judicial capacity.

*Third,* that in rendering his decision dismissing the state court case Judge Fox did not exceed his authority, nor did he act legislatively as alleged by the plaintiff.

*Fourth,* that there is no showing that Judge Fox, in dismissing the state court action acted in bad faith or that his decision was motivated by malice, prejudice, bias, partiality, undue influence or from other improper motives.

*Fifth,* that plaintiff Kenney, as a dissatisfied litigant, is in reality seeking a federal court review of a state court decision of Judge Fox, and is seeking to relitigate the issues involved and determined in the state court action.

*Sixth,* that the complaint in the present case does not state facts that, under the civil rights act, would entitle plaintiff to the relief sought against defendant Fox.

*Seventh,* that, assuming the truth of the material facts, but not the conclusions, alleged in the plaintiff's complaint, the court holds that the complaint fails to state a claim against the defendant upon which relief could be granted.

For the reasons which I have stated the defendant's motion to dismiss the present action is granted, and an order will be entered accordingly.

The court will allow no costs in connection with the two motions heard and determined today.