**George M. WOOD, Jr., Appellant,**

v.

**CONNEAUT LAKE PARK, INC.**

**No. 16305.**

United States Court of Appeals
Third Circuit.

Argued Sept. 26, 1967.

Decided Nov. 21, 1967.

Michael Hahalyak, Pittsburgh, Pa., for appellant.

William C. Walker, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Appellant, George M. Wood, Jr., appeals from the dismissal below of his complaint captioned "Complaint to Vacate the Order of the Supreme Court of Pennsylvania Reversing the Judgment of the Lower Court (Common Pleas Court of Crawford County, Pennsylvania) and Entering Judgment N.O.V. for Defendant."

Appellant, plaintiff in the Pennsylvania trial court, filed an action in trespass seeking damages for injuries he sustained as a result of the alleged negligence of defendant, Conneaut Lake Park, Inc., appellee here, in the operation and design of its roller coaster called the Blue Streak. After a trial of six and one-half days, the jury returned a verdict of $75,-000 for plaintiff. Defendant's motion for a new trial or judgment non obstante veredicto was denied by the trial judge. This was appealed to the Supreme Court of Pennsylvania which in a four to three decision reversed the trial court and entered judgment n. o. v. for defendant. Wood v. Conneaut Lake Park, Inc., 417 Pa. 58, 209 A.2d 268 (1965). Plaintiff's petition for reargument was denied as was his petition for certiorari to the United States Supreme Court. 382 U.S. 865, 86 S.Ct. 132, 15 L.Ed.2d 103 (1965).

Claiming that the decision of the Supreme Court of Pennsylvania constituted a violation of the due process clause of the Fourteenth Amendment, appellant filed an action in the District Court. His argument both below and before this Court is that the Supreme Court of Pennsylvania in granting defendant's motion for a judgment n. o. v. acted as the determiner and arbiter of facts and in so doing found facts which have no support in the record. Appellant supports his assertion by relying on the dissenting opinion of the state supreme court which expressed displeasure with the majority opinion. Appellant also dissects the majority opinion in an attempt to indicate it has no support in the record and in some instances is contrary to the facts brought out at trial.

The District Court dismissed the complaint finding it had no appellate jurisdiction to consider the case as a review of the action of the highest state court, and alternatively, if it was to be treated as an original action, appellant showed no basis for his allegation of deprivation of due process under the Fourteenth Amendment. Wood v. Conneaut Lake Park, Inc., 258 F.Supp. 777, 780 (D.C.W.D.Pa.1966).

We have independently reviewed the state court record and our examination indicates that appellant's contentions do not rise to constitutional dimensions. Since appellant claims there is not support for the majority opinion, we quote at length that portion of the opinion with which issue is taken:

"Plaintiff produced one witness to prove *this crucial point of causal negligence.* Dr. James Romualdi, an Associate Professor of Civil Engineering at Carnegie Institute of Technology, was plaintiff's witness. He examined the construction plans of the track and physically inspected it for 20–25 minutes during the trial, nearly six years after the accident. Cf. Murray v. Siegal, 413 Pa. 23, 29, 195 A.2d 790. He testified (a) in general as to the engineering principles involved and (b) in particular that 'with respect to the design and construction of the track itself there was a very serious violation of good, sound engineering design features' in that the track was not adequately banked.

"Dr. Romualdi based his opinion and conclusions as to the allegedly improper construction of the curve where the accident occurred, upon the proper construction of a railroad or highway which has a completely different design. The construction of curves on a highway for automobiles traveling from 40 to 75 miles an hour is, as Dr. Romualdi testified, obviously and unquestionably different from the proper construction of a curve on a roller coaster track. It is clear that this was

not an applicable analogy. Far more important, Romualdi's testimony was inadequate to sustain a finding of negligent construction. Romualdi had had no experience in designing wooden structures like this, nor had he analyzed them or examined them before trial. He testified (a) that the lateral acceleration was excessive, but he did not 'have knowledge of just how much lateral acceleration a person could take'; and (b) twice in his testimony *he refused to say that the design was unsafe*, but merely said that it was not the best possible engineering design. However, the evidence showed that from the time the track had been reconstructed several months prior to the accident and until the time of this trial, 1,297,802 'human bodies' (persons) (including all of plaintiff's family) had ridden this course and absorbed the abruptness of this curve without injury. In addition to all of this, (a) plaintiff was riding in a safely handrailed car with seat belts, and (b) admittedly failed to protect himself by holding on (if necessary) to the front rail of the car, and (c) (we repeat) none of plaintiff's party or any other person on this ride was injured at this curve or bend on this ride, and (d) plaintiff never told his first doctor (Dr. Butters) of this alleged accident on the roller coaster, and (e) plaintiff never commenced this suit or reported his accident to the defendant or presented a claim to the defendant until a few days before the expiration of the two year statute of limitations." Wood v. Conneaut Lake Park, Inc., supra, 417 Pa. at pages 62–64, 209 A.2d at pp. 270–271.

Appellant urges error in the court's statement that Dr. Romualdi had no experience in analyzing wooden structures such as the Blue Streak and in his use of the highway analogy. However, an examination of the record reveals the following statements by Romualdi in response to defense counsel's questions:

"A. * * * So in this respect, I would say yes, I have analyzed a structure of the general type of the Blue Streak.

Q. In theory only?

A. Yes, sir, I have never designed one.

Q. You have never examined a structure like the Blue Streak or any other wooden structures that you can cite at this time?

\* \* \* \* \* \*

A. Well, there are two questions in there. To the first part, I have not examined a structure like the Blue Streak, except insofar as I have been near roller coasters.

Q. Been near it?

A. Yes.

Q. Never have been near this one until today?

A. Never been near this one. The first half of the question, the answer is no, I have not. The second half, yes, I have examined wooden structures."

Dr. Romualdi then explained that he had examined wooden structures such as foot bridges, towers and cofferdams. Nowhere did the witness state that he had examined roller coasters before this. Furthermore, it is obvious that the objectives in highway and roller coaster design differ. This in effect, was conceded by plaintiff when he admitted that the Blue Streak was a "thrill ride".

Appellant also urges error in the court's alleged finding that Dr. Romualdi's examination of the Blue Streak occurred during the trial. The record clearly indicates that the witness had examined the plans months before testifying and his physical examination of the roller coaster during the trial was only for confirmation. We cannot accept appellant's interpretation of the court's statement. Nowhere is there any indication that the court found that the witness's testimony was based solely on what he noted when he visited the site.

In reference to Dr. Romualdi, the majority opinion emphasized that "twice in his testimony *he refused to say that the design was unsafe*, but merely said that

it was not the best possible engineering design." Appellant attacks this contending there is nothing in the record to support the statement. Our examination of the record accords with the court's statement. On cross-examination Dr. Romualdi stated:

"Q. You say that this, the way this Blue Streak is constructed approaching that turn the way it's banked and the suddenness of the turn and all is not safe, is that correct?

A. Well, if I have to use my words, I believe that I said it was not in good engineering design."

Appellant also argues that the majority improperly accepted defendant's figures that over one million persons had ridden the Blue Streak without injury. He claims that at least four persons had sustained broken collar bones on the ride. The evidence that four persons had sustained injury is weak. More important is the fact that these alleged injuries occurred prior to 1956 when the ride was partially rebuilt. Since defendant's figure of 1,297,802 riders included only those rides after the date of plaintiff's injury, which was after the partial reconstruction, the majority opinion does not misstate the facts.

Plaintiff produced one witness, a Diane Jean Ion, who claimed to have been similarly injured on the Blue Streak. However, on cross-examination, her testimony was greatly discredited when defense counsel brought out that she did not sustain her alleged injury at the same point on the ride as had plaintiff. In addition, her treating physician testified that he diagnosed her condition as catatonic schizophrenia and indicated that her medical history showed prior attacks of a similar nature.

■ We have reached the same conclusion regarding the other points advanced by appellant. In no case have we been able to find any error of constitutional proportions. All that appears is that the majority of the Pennsylvania Supreme Court was selective in their use of testimony to support the conclusions in their written opinion. Admittedly the case was close, but the fact that we might have taken a different approach if the case had been before us on appeal from the trial court, does not require reversal. Absent a showing of arbitrary or capricious action on the part of the state supreme court, no Fourteenth Amendment violation exists.

"If all the judgments complained of were merely erroneous that would not amount to a denial of due process of law. American Railway Express Co. v. Commonwealth of Kentucky, 273 U. S. 269, 47 S.Ct. 353, 71 L.Ed. 639. However, if a case between private parties is arbitrarily and capriciously decided, in violation of settled principles of law and contrary to undisputed facts, though the court so deciding had jurisdiction over the suit, the judgment may be in violation of the 14th Amendment. Postal Telegraph Cable Co. v. Newport, Ky., 247 U.S. 464, 38 S.Ct. 566, 62 L.Ed. 1215." Williams v. Tooke, 108 F.2d 758, 759 (5 Cir. 1940), cert. denied 311 U.S. 655, 61 S.Ct. 8, 85 L.Ed. 419 (1940).

Our study of the record does not indicate that the entry of judgment n. o. v. was without foundation.

■ Even if we were to assume that the judgment was erroneous, appellant's allegations would not indicate a due process violation. Chance v. County Bd. of Sch. Trustees of McHenry County, Ill., 332 F.2d 971 (7 Cir. 1964); Shemaitis v. Reid, 193 F.2d 119 (7 Cir. 1951); East Crossroads Center, Inc. v. Mellon-Stuart Co., 245 F.Supp. 191 (D.C.W.D.Pa.1965); Kenney v. Fox, 132 F.Supp. 305 (D.C.W. D.Mich.1955), aff'd 232 F.2d 288 (6 Cir. 1956), cert. denied 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956).

"Mere error of state law will not be declared to be a denial of due process. Gryger v. Burke, 1948, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683, rehearing denied 235 U.S. 837, 69 S.Ct. 13, 93 L. Ed. 389. See, also, Rupp v. Teets, 235 F.2d 674, C.A.9, 1956, cert. den. 352 U.S. 900, 77 S.Ct. 139, 1 L.Ed.2d 92. The Constitution does not guarantee

that the decision of state courts shall be free from error, or require that pronouncements shall be consistent. Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268, 1937; Tracy v. Ginsburg, 205 U.S. 170, 27 S.Ct. 461, 51 L.Ed. 755, 1907; Central Land Co. of West Virginia v. Laidley, 159 U.S. 103, 16 S.Ct. 80, 40 L.Ed. 91, 1895. When the parties have been fully heard in the regular course of judicial proceedings, an erroneous decision of the state court does not deprive the unsuccessful party of his property without due process of law. Filer v. Steele, 228 F. 242, affirmed 241 U.S. 648, 36 S.Ct. 550, 60 L.Ed. 1220, 1916; Bonner v. Gorman, 213 U.S. 86, 29 S. Ct. 483, 53 L.Ed. 709; Delmar Jockey Club v. State of Missouri, 210 U.S. 324, 28 S.Ct. 732, 52 L.Ed. 1080 (1908); Central Land Co. v. Laidley, supra." East Crossroads Center, Inc. v. Mellon-Stuart Co., supra, 245 F.Supp. at page 194.

"Mere error in a judgment entered by a state court having jurisdiction over the parties and the subject matter is not sufficient to raise a federal question under the Constitution." Chance v. County Bd. of Sch. Trustees of McHenry County, Ill., supra, 332 F.2d at page 974.

"The Constitution does not guarantee the plaintiff as a citizen against loss through erroneous decisions of state courts, nor does it guarantee uniformity of decisions by state courts." Kenney v. Fox, supra, 132 F.Supp. at page 315.

Failing a prerequisite showing of arbitrary action by the state court, the District Court was without original jurisdiction to entertain appellant's suit. His remedy, if any, was to petition the United States Supreme Court for certiorari. That course was followed without success. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); Chance v. County Bd. of Sch. Trustees of McHenry County, Ill., supra, 332 F.2d at page 974; Williams v. Tooke, supra, 108 F.2d at page 759; East Crossroads Center, Inc. v. Mellon-Stuart Co., supra, 245 F.Supp. at page 194. Furthermore, no statutory authority exists for the District Court's exercise of appellate jurisdiction under the circumstances of this case.

The judgment of the District Court will be affirmed.